598 A.2d 87

**Nicholas J. MURPHY, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (ROADWAY EXPRESS, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 3, 1991.

Decided Sept. 16, 1991.

Reargument Denied Nov. 19, 1991.

Thomas E. Miller, for petitioner.

Eugene N. McHugh, for respondent.

Before McGINLEY and KELLEY, JJ., and NARICK, Senior Judge.

McGINLEY, Judge.

This is an appeal by Nicholas J. Murphy (Claimant) from an order of the Workmen's Compensation Appeal Board (Board) reducing Claimant's benefits from total disability to partial disability on the grounds that suitable employment was made available to Claimant by Roadway Express, Inc. (Employer). We reverse.

Claimant suffered a work-related injury to his back on August 14, 1985. Pursuant to a notice of compensation payable dated August 29, 1985, Claimant was paid total disability benefits of $336 per week, based on an average weekly wage of $636.45. On October 18, 1988, Employer filed a modification petition, alleging that Claimant's earning power had increased, and as of May 9, 1988 that Claimant should no longer be compensated for total disability. On December 8, 1989, after a series of hearings, Referee Jacqueline S. Jacobs determined that Claimant was no longer totally disabled. The referee found that Employer referred Claimant to a position at the YMCA of Hanover with an "average earning power" of $200 per week and reduced Claimant's weekly benefit to $290.98 per week. Decision of the Referee, November 17, 1989, (Decision of the Referee) at 3.

On appeal, Claimant maintains that the referee disregarded substantial competent evidence produced by Claimant concerning his good faith in the job search process. Claimant also alleges that the referee disregarded the standards for resolving a petition for modification set forth by the Pennsylvania Supreme Court in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). Finally, Claimant alleges that the referee committed an error of law by not requiring the employer to demonstrate the availability of work at the time Employer filed its modification petition, citing *International Petroleum Service v. Workmen's Compensation Appeal Board*, 60 Pa.Commonwealth Ct. 141, 430 A.2d 1055 (1981).

■ Our scope of review in a case where both parties present evidence is limited to a determination of whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa.Commonwealth Ct. 15, 589 A.2d 291 (1991).

*Kachinski* delineates the requirements for a modification of a claimant's benefits where it is alleged that the claimant's earning power has increased:

It is enough that the employer produce medical evidence describing the claimant's capabilities and vocational evidence classifying the job, *e.g.* whether it is light work, sedentary work, etc., along with a basic description of the job in question. From such evidence it will be up to the referee to determine whether the claimant can perform the job in question.... Thereafter, the decision of the referee will be reviewable as a finding of fact.

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which claimant has been given medical clearance, *e.g.,* light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then [the] claimant's benefits should continue.

*Kachinski*, 516 Pa. at 252, 532 A.2d at 380.

There is no dispute that Claimant's medical condition improved between the time of his injury and the time the petition for modification was filed.[1] There is also no dispute that Employer sent Claimant notice of six jobs by certified mail during May of 1988, including "the name, address, and contact person of the business, the physical description and general occupational category." *See* Deci-

---

1. Claimant suffered temporary paralysis and severe weakening of his right arm immediately after his work-injury occurred. When Dr. Wenner, Employer's medical witness, examined Claimant, he was ambulatory and informed Dr. Wenner that the strength was returning in his right arm. Deposition of Dr. Earl J. Wenner, Jr., D.O., April 14, 1989 (Deposition of Dr. Wenner) at 6.

sion of the Referee at 3. The referee's findings concerning these referrals read as follows:

6. Ms. Sharkey [Employer's vocational witness] contacted the offices of Drs. Butler and Paul as well as Dr. Wenner as to their professional opinions as to the vocational development relative to physical capabilities limitations.

7. Ms. Sharkey determined from her assessment of the medical reports that claimant was capable of performing within the sedentary field as a general occupation category.

8. Ms. Sharkey testified that the following jobs were referred to Claimant and were available in his geographic area, and were suitable based on his vocational background and physical capabilities. [At this point the referee's opinion lists the six jobs which Ms. Sharkey testified were presented to Claimant, and the rates of pay of each job.]

9. That the Gettysburg, YMCA and Schaad positions were approved by both Dr. Wenner and Dr. Butler as being suitable to Claimant's capabilities.

. . . . .

14. Dr. Wenner opined that Claimant was physically capable of working each of the jobs referred to him.

. . . . .

17. This referee finds Dr. Wenner's medical testimony credible and same is adopted as fact.

Decision of the Referee, at 2–3. At the hearing, Claimant presented the deposition of his neurologist, Dr. Scott Cherry, who testified that Claimant was not capable of performing any of the jobs referred to him. Deposition of Dr. Scott Cherry, M.D., April 10, 1989, (Deposition of Dr. Cherry) at 20–22.[2] The referee did not find Dr. Cherry's testimony

2. Dr. Cherry was deposed after an examination of Claimant on November 16, 1988. Deposition of Dr. Cherry at 15. It was at this time that he rendered his opinion concerning the suitability of the job descriptions provided Claimant. Claimant's Exhibit D–3, Reproduced

credible, and concluded that Claimant's benefits should be modified in accordance with the position referred to him at the YMCA of Hanover, although Claimant did not obtain employment through this referral. Decision of the Referee at 3.

Although *Kachinski* calls for an analysis of the claimant's good faith where the testimony indicates that the claimant applied for the position, the referee's decision contains no specific finding in this regard despite Claimant's uncontradicted testimony that he applied and was not hired for the position with the Hanover YMCA. Notes of Testimony, June 20, 1989, (N.T.) at 17. Claimant produced a corroborating letter from the business manager of the Hanover YMCA which stated that Claimant's qualifications were not suitable for the position. Claimant's Exhibit 1, R.R. at 171a, 239a. The referee's only response was to note that Claimant testified he applied for positions with the YMCA of Hanover and Gettysburg Transformer on the same day, but "submitted evidence bearing different application dates August 22 and August 24, 1988." Decision of the Referee at 3.[3]

Claimant argues that the referee also ignored testimony outlining his efforts to obtain a job through Employer's other referrals. Claimant testified before the referee that he was aware that the job referrals he received in May, 1988, Gettysburg Transformer, the YMCA, and Schaad Detective Agency, were approved by Dr. Wenner, but he was under the impression that the job referrals had to be signed by two doctors in order for him to be medically cleared for the job.[4] N.T. at 24. Nevertheless, Claimant testified that

Record (R.R.) at 105a. Claimant applied for the Gettysburg Transformer position and the YMCA position in August of 1988.

3. Claimant's Exhibit One, the letter from Faye George of the YMCA of Hanover, is dated August 22, 1988. Claimant also produced his job referral for Gettysburg Transformer which bore the notation, "8/24/88, Gettysburg Transformer Production Manager, Dean Bennett." R.R. at 241a.

4. During the course of the June 20, 1989 hearing, Claimant attempted to present evidence that the Getty Gas Station job had not been approved by one of his treating physicians. N.T. at 31. This attempt

he applied for the position with Gettysburg Transformer, and discovered, after discussion with the production manager, that the job description did not accurately describe the work available. N.T. at 27. Claimant testified that he was not hired. N.T. at 20.

██ Claimant testified that he did not apply for the position with Schaad Detective Agency. Claimant also stated that he was not aware of any medical clearance when he received the job referrals, including the Schaad Detective Agency referral. We note that notification of medical clearance is essential in an evaluation of Claimant's good faith because Claimant has no obligation to apply for a job he has not been medically cleared to perform. *Lukens, Inc. v. Workmen's Compensation Appeal Board (Williams)*, 130 Pa.Commonwealth Ct. 479, 485–486, 568 A.2d 981, 984 (1989). *See also Mrs. Smith's Frozen Foods v. Workmen's Compensation Board of Appeals (Gladfelter)*, 113 Pa.Commonwealth Ct. 25, 535 A.2d 1259 (1988) (medical clearance for a job category must precede availability of jobs, and both must precede the accrual of a claimant's duty to act).

██ Lack of good faith cannot be imputed to Claimant where he attempted to obtain a position with the YMCA of Hanover and the evidence is uncontradicted that he applied for the position but was not hired.[5] Also, lack of good faith cannot be imputed to Claimant with regard to the Gettysburg Transformer position for the same reason. In the case of the Schaad Detective Agency job, the referee mere-

was a follow-up to Claimant's testimony that when he received the Getty, Lowe's and Kentucky Fried Chicken referrals, they were not signed by any doctors. *Id.* The referee's response was to state that she would not consider the Getty, Lowe's and Kentucky Fried Chicken referrals in her decision, but would restrict her findings of fact to the Gettysburg Transformer, Hanover YMCA and Schaad Detective Agency referrals. N.T. at 32. Given this statement by the referee, the purpose of her finding that the Getty, Lowe's and Kentucky Fried Chicken jobs were referred to Claimant is unclear.

5. If a claimant applies and is not hired for a position, the employer fails to establish that this position is available work. *Titusville Hospital v. Workmen's Compensation Appeal Board (Ward)*, 122 Pa.Commonwealth Ct. 619, 552 A.2d 365 (1989).

ly noted that Claimant failed to apply. The referee did not discuss Claimant's testimony concerning this referral.[6]

The referee's findings neither state nor imply that Claimant's testimony was rejected, but focus instead on the medical testimony of Dr. Wenner. However, even if Dr. Wenner's testimony was accepted as credible, *Kachinski* requires that an adverse credibility determination be made concerning the Claimant's testimony of good faith efforts to secure a job before any modification of Claimant's benefits. The Board's review perpetuates the referee's error.

In summary, there is a lack of substantial evidence to support the referee's determination that Employer satisfied its burden under the *Kachinski* standards with regard to the job with the YMCA of Hanover. In light of the foregoing, it is unnecessary for us to address Claimant's second and third arguments.

The order of the Board is reversed.

## ORDER

AND NOW, this 16th day of September, 1991, the order of the Workmen's Compensation Board of Appeals in the above-captioned matter is hereby reversed.

---

6.    CLAIMANT'S COUNSEL TO CLAIMANT:

Q: But Schaad Detective Agency, did you go for an interview with that employer?
A: No, I did not.
Q: Okay, why didn't you?
A: Well, it says on here [the job description] "This position involves 90 percent standing and walking and 10 percent sitting." I can't—the way I look at sedentary, that means it is a sitting job....
I can't walk for seven and a half hours a day....
Notes of Testimony, March 20, 1989, at 44.