613 A.2d 648

**Ronald MASKO, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (CIVIC CENTER CLEANING COMPANY, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 2, 1991.

Decided Aug. 5, 1992.

---

8. Referee's Findings of Fact, 12/26/89, No. 2.

560

Edward J. Abes, for petitioner.

Charles G. Brown, for respondent.

Before CRAIG, President Judge, DOYLE, J. (P.), and BARRY, Senior Judge.

BARRY, Senior Judge.

Ronald Masko, the claimant, appeals an order of the Workmen's Compensation Appeal Board (the Board) which affirmed an order of a referee granting a suspension/modification petition of the employer, Civic Center Cleaning Co., Inc., and ordering that the employer pay only a portion of the claimant's medical bills. We reverse.

The claimant injured his back at work in June of 1984 and began collecting benefits for total disability pursuant to a notice of compensation payable. The employer subsequently filed two petitions, the first of which was a suspension/modification petition wherein it alleged that the claimant had failed to pursue in good faith job referrals within the claimant's physical capabilities. The employer also filed a review petition in which it questioned the reasonableness and necessity of some of the claimant's medical bills. Following hearings and the introduction of evidence, the referee found that the claim-

ant had not in good faith pursued job opportunities within his physical capabilities to which he had been referred by the employer; by order of May 23, 1989, the referee reduced the claimant's benefits based upon the conclusion that the claimant was only partially disabled. That same order required the employer to pay only one-half of the claimant's medical bills up to September 26, 1988, and none thereafter. The Board affirmed and the claimant has sought our review.[1]

■ Our scope of review is limited to determining, *inter alia*, if an error of law was committed and if all necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. On a petition to either modify or suspend benefits because a claimant, though not completely recovered from the work-related injuries, is capable of performing work less strenuous than was required at his job when he was originally injured, the procedure is as follows:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.*, light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

*Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 252, 532 A.2d 374, 380 (1987). The claimant contends that the referee erred when he concluded that the employer met its burden in this case.

The claimant notes initially that the employer never informed the claimant that its medical experts ever told him that he had been given clearance to do less strenuous work.

1. This case was reassigned to the writer on February 18, 1992.

Our review of the record indicates that the employer offered no evidence in this regard. The claimant testified that he went to his medical expert each time he was sent a job referral to see if he could perform those jobs with his physical limitations. It is undisputed that the claimant's doctor disapproved four of the jobs and approved three of the jobs. It is also undisputed that the claimant applied for each of the three jobs which his doctor approved but obtained none of them. The referee nonetheless granted the employer's modification/suspension petition, stating that he rejected the testimony of the claimant and "believes that claimant did not make a good faith effort in attempting to secure alternate employment *as claimant failed to apply for four of the positions presented to him.*" (Referee's Decision, Finding of Fact 15, 5/23/89.) Given this factual scenario, we are convinced that the referee erred in granting the employer's modification/suspension petition.

■ The claimant does not dispute that the employer offered the necessary medical evidence to the referee to prove a change in his medical condition. The claimant does, however, assert that the employer never notified him that he had been given medical clearance to do light duty work. The employer points to no such evidence that it offered. As we have stated, "... it is essential that Claimant be made aware that he is medically sanctioned for an occupational category." *Lukens, Inc., v. Workmen's Compensation Appeal Board (Williams),* 130 Pa.Commonwealth Ct. 479, 486, 568 A.2d 981, 984 (1989). Because we held that employer's failure to offer such evidence in *Lukens* mandated a holding that the employer had not met its burden under *Kachinski,* we must similarly hold that the employer in the present case also failed to sustain its burden.

■ The employer aptly points out that the claimant was notified by his own physician that he was capable of doing three of the jobs. The claimant posits that the employer's failure to inform him of medical clearance for light duty jobs in and of itself relieved him of any responsibility for applying for any jobs. There is no precedent in this Court for the principle that a claimant must ask his or her physician for

medical clearance when the employer fails to inform the claimant of such clearance. We need not decide that question today because the claimant did in fact consult with his own doctor and applied for the jobs which his doctor approved. The referee did not make any factual finding which would indicate that the claimant did not act in good faith when applying for those three jobs; rather, the referee determined that the claimant acted in bad faith because he did not apply for the four jobs which his doctor believed too physically taxing. We are constrained to hold that failing to apply for those four jobs did not constitute bad faith on the part of the claimant.[2] Because the claimant's inaction with regard to those four jobs cannot be considered, we are left with a situation where the claimant applied for all of the jobs which he had been told that he was capable of doing. Because he did not obtain any of those jobs, his benefits must continue. *Kachinski.*

 The claimant also argues that the referee and the Board erred in relieving the employer of responsibility for paying for a portion of the claimant's medical expenses. The referee decided that a portion of the medical expenses were unreasonable and unnecessary. We have held, however, that a referee is empowered to relieve an employer of its obligation to pay for medical expenses only after the date of a decision that those expenses were unreasonable or unnecessary. *Johnson v. Workmen's Compensation Appeal Board (Albert Einstein Medical Center)*, 137 Pa.Commonwealth Ct. 176, 586 A.2d 991 (1991); *Boehm v. Workmen's Compensation Appeal Board (United Parcel Services)*, 133 Pa.Commonwealth Ct. 455, 576 A.2d 1163 (1990). In this case, the referee decided on May 23, 1989 that the expenses charged by the claimant's doctor were unreasonable and excessive. Since the referee

---

**2.** The referee's findings show that he ultimately determined that the claimant was capable of performing all of the seven jobs, thereby discrediting the opinion of claimant's doctor that four of the jobs were outside the claimant's physical capabilities. This credibility determination does not alter our conclusion as we believe that the claimant was entitled to act on his doctor's advice when the employer failed to notify him that he had been medically cleared for light duty work by the employer's physicians.

held that the employer was not responsible for related medical expenses prior to that date, the referee erred. We must also reverse the Board's order affirming the referee's decision in this regard.

Reversed.

ORDER

NOW, August 5, 1992, the order of the Workmen's Compensation Appeal Board, dated September 13, 1990, at A89–1514, is reversed.

DOYLE, Judge, concurring and dissenting.

I agree entirely with the majority's disposition of the issues concerning the modification petition. I further acknowledge that *Boehm v. Workmen's Compensation Appeal Board (United Parcel Services)*, 133 Pa.Commonwealth Ct. 455, 576 A.2d 1163 (1990), and *Johnson v. Workmen's Compensation Appeal Board (Albert Einstein Medical Center)*, 137 Pa.Commonwealth Ct. 176, 586 A.2d 991 (1991), and their progeny[1] are controlling precedent for the proposition that an employer cannot unilaterally cease payments of medical expenses on the theory that they are unreasonable or unnecessary and I am in complete agreement with this. But, I am obliged to point out that I disagree with the holdings in *Boehm/Johnson* and their progeny that when an employer challenges medical expenses under Section 306(f) of The Pennsylvania Workmen's Compensation Act (Act),[2] the employer is not entitled to retroactive relief if those expenses already paid out are ultimately found by the referee to be unreasonable, excessive or unnecessary. I write separately to express my disagreement with this last principle and to point out that equally controlling contrary

1. *See e.g., Brown v. Workmen's Compensation Appeal Board (Borough of New Eagle)*, 137 Pa.Commonwealth Ct. 575, 587 A.2d 34 (1991); *Moats v. Workmen's Compensation Appeal Board (Emerald Mines Corp.)*, 138 Pa.Commonwealth Ct. 449, 588 A.2d 116 (1991).

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 531.

precedent exists.[3]

I refer to the "*Glinka* trilogy." The *Glinka* case actually involved three separate appeals to this Court and a brief explanation is helpful for an understanding of what occurred.

On September 30, 1972, William Glinka, while employed by Sears, Roebuck & Co. as a bill collector, suffered a work-related injury to his lower back as a result of an automobile accident. By agreement Sears paid him eighty dollars a week until he returned to work on November 27, 1972 and executed a final receipt. Glinka left work on January 8, 1973 when his disability recurred. He entered into a supplemental agreement guaranteeing him eighty dollars a week for the duration of his total disability as well as payment of all hospital and medical expenses related to the disability.

On February 24, 1975 Glinka filed a petition to modify the supplemental agreement alleging, *inter alia,* Sears' failure to pay his work-related medical and hospital expenses. The referee in an order dated July 20, 1976, determined, *inter alia,* that Sears was responsible for all medical expenses relating to the injury. Cross appeals to the Board followed.[4]

The Board affirmed the referee's order with regard to the medical expenses. The Board also remanded the case to the referee for reasons not relevant here. Subsequent to the remand, Glinka again appealed to the Board which, *inter alia,* ordered Sears to continue paying the cost of Glinka's spa and physiotherapy treatments. Cross appeals to this Court followed. *See Glinka v. Workmen's Compensation Appeal Board (Sears, Roebuck and Co.),* 75 Pa.Commonwealth Ct. 504, 462 A.2d 909 (1983) (*Glinka I*).

It is, however, only Sears' cross appeal which is illustrative for our purposes. Sears challenged, *inter alia,* the Board's order requiring it to pay the continuing costs of Glinka's physiotherapy treatments rendered at the health spa. We affirmed that portion of the order noting that the testimony of

3. While numerous cases on this issue have been filed, this is the first opportunity I have had to express my position as I was not a panel member in *Boehm, Johnson, Moats* or *Brown.*

4. The subject of Glinka's cross appeal is irrelevant for our purposes.

Glinka's physician (found credible by the referee) demonstrated that such treatments at a health spa would be identical to those at a hospital and less costly. Our order was filed July 18, 1983.

Soon after the Board's second order, dated April 23, 1981, had been entered in *Glinka I,* and much prior to this Court's decision in that case, Glinka, on May 8, 1981, filed a commutation petition. Sears contested this petition and filed its own petition for termination/suspension/modification. The petitions were consolidated. The referee, on October 11, 1983, denied the request for commutation but granted the suspension. The Board affirmed on October 18, 1985 and Glinka appealed to this Court. *See Glinka v. Workmen's Compensation Appeal Board (Sears, Roebuck and Co.),* 104 Pa.Commonwealth Ct. 175, 521 A.2d 503 (1987), *petition for allowance of appeal denied,* 516 Pa. 644, 533 A.2d 714 (1987) (*Glinka II* ).

Glinka maintained, *inter alia,* that *the referee and Board had erred in disapproving medical expenses incurred prior to the effective date of the suspension, i.e.,* September 15, 1981. These expenses included a $736.00 country club initiation fee and a total of $1,080.00 for weekly rubdowns. It was Glinka's contention that under our decision in *Glinka I* payment of such expenses had been ordered. *Glinka II* explained, however, that *Glinka I* merely stood for the proposition that an employer had to continue to pay continuing medical expenses *only for as long as they were reasonable or necessary.* It also noted that Sears had never filed a petition to review medical expenses, but had merely cut off such payments unilaterally in direct contravention of the Act. But, this Court *held* that even when an employer unilaterally refuses to pay medical costs already incurred, and even when a separate petition under Section 306(b) of the Act (the medical expense provision) had not been filed, unreasonable and unnecessary medical expenses are not compensable.[5]

5. Judge Colins, in *Glinka II,* also identified a problem still facing us today when he observed that the Act, while disallowing unilateral cessation of medical expenses, does not provide for any penalty if such action is committed. He went on to observe, however, that "had [Sears] filed a petition [to review medical expenses] and ... prevailed,

Judge Colins in *Glinka II* affirmed the Board insofar as it denied medical expenses incurred even before the suspension order was entered, because the referee, exercising his fact finding power, had found those expenses to be unreasonable and unnecessary even while chastising Sears for its self-help approach in unilaterally ceasing to pay them. He recognized that in that case its action had not actually harmed Glinka since what Glinka never received he had not been entitled to anyway.

While *Glinka II* was winding its way through the legal system, a petition to reinstate suspended benefits, which Glinka had filed in the interim, was granted by a referee effective October 1, 1983. The Board order issued July 6, 1987 affirmed the grant of Glinka's reinstatement petition. It also ordered, however, contrary to our holding in *Glinka II* (which had been filed four months earlier) that Sears was responsible for massage and whirlpool treatment expenses. This time it was Sears which appealed to our Court. *See Sears, Roebuck and Co. v. Workmen's Compensation Appeal Board (Glinka),* 117 Pa.Commonwealth Ct. 1, 542 A.2d 630 (1988) (*Glinka III* ).

In *Glinka III* Sears contended that the Board erred in requiring it to pay medical expenses relating to Glinka's massage and whirlpool treatments. Because we had held in *Glinka II* that such payments were unnecessary, in *Glinka III* we declined "to uphold that part of the Board's order requiring that the employer pay claimant's bills relating to massage and whirlpool treatments received by Claimant at his health club." Thus, Judge Colins' opinion in *Glinka II*, that Glinka was not entitled to medical expenses for massage and whirlpool treatments even prior to the filing of a petition to review such expenses, remained intact.

there can be no doubt that the employer would be entitled to reimbursement for all unreasonable or unnecessary medical fees it had paid" presumably from the Supersedeas Fund. *Glinka II*, 104 Pa.Commonwealth Ct. at 180, 521 A.2d at 506. *See also Insurance Company of North America v. Workmen's Compensation Appeal Board (Kline and Packard Press)*, 137 Pa.Commonwealth Ct. 393, 586 A.2d 500 (1991), *petition for allowance of appeal granted*, 527 Pa. 656, 593 A.2d 426 (1991).

Having reviewed the *Glinka* trilogy in depth, I now respectfully call attention to their inconsistency with *Boehm/Johnson* and their progeny. In *Boehm* the employer did not cease payment of medical expenses but was held not to be entitled to retroactive reimbursement even when it prevailed on its petition to review medical expenses. The reason: Section 306(f) does not authorize such relief. However, it does not prohibit it either. In *Johnson* the employer unilaterally ceased payment of medical expenses, and we held that such an action was violative of the Act. Judge Colins made the same observation in *Glinka II*, and, as previously noted, I agree that it is a legally sound proposition. But, the distinction between the cases is the remedy for this violation. *Boehm/Johnson* and their progeny mandate that employers who unilaterally stop payments must pay the withheld medicals, and that employers who continue making payments are not entitled to reimbursement or credit even retroactive to the date they filed the petition to review medical expenses and *even if those expenses are ultimately determined to have been unreasonable or excessive.*

In contrast, *Glinka II* and *III* disallowed the retroactive payment of medical expenses to a claimant even when the employer unilaterally ceased to pay them if they were ultimately found to be unnecessary or excessive. And, the clear import of the *Glinka* opinions is that the disallowance of the medical costs harkens back to the point where the expenses became unreasonable or unnecessary irrespective of when a petition to review those medical expenses was filed or ultimately decided by the referee. The reason: while such unilateral cessation of benefits is a violation of the Act, there is no harm to the claimant because he or she was not entitled to the benefits to begin with. And, the corresponding tenet of this position is that if an employer continues payment of medical expenses while its petition to review medical expenses is pending, upon a finding that such expenses *were* unnecessary or excessively costly, "reimbursement" should be permitted.

The next question then is what should be the nature of that reimbursement. Is the employer entitled to seek payment from the supersedeas fund? Alternatively, is it entitled to a future credit against compensation to be paid?

To answer this inquiry the starting point must be Section 306(f) itself. It provides:

(ii) The employer shall have the right to petition the department for review of the necessity or frequency of treatment or reasonableness of fees for services provided by a physician or other duly licensed practitioner of the healing arts. Such a petition shall in no event act as a supersedeas, and during the pendency of any such petition the employer shall pay all medical bills if the physician or other practitioner of the healing arts files a report or reports as required by subparagraph (I) of paragraph (2) of this subsection.

This Court recently considered the question of whether an employer could seek reimbursement from the Supersedeas Fund for medical expenses ultimately determined to be unreasonable or excessive. *ADIA Personnel Agency v. Workmen's Compensation Appeal Board (Coleman)*, 137 Pa.Commonwealth Ct. 405, 586 A.2d 507 (1991), *petition for allowance of appeal denied*, 528 Pa. 624, 597 A.2d 1154 (1991). We recognized in *ADIA* that Section 306(f) disallowed an automatic supersedeas when a petition to review medical expenses was filed. As I pointed out in my concurring opinion, the majority in *ADIA*, while maintaining that no discretionary supersedeas existed, relied for support upon a case, *Insurance Company of North America v. Workmen's Compensation Appeal Board (Kline and Packard Press)*, 137 Pa.Commonwealth Ct. 393, 586 A.2d 500 (1991), *petition for allowance of appeal granted*, 527 Pa. 656, 593 A.2d 426 (1991), which suggested that it did. I asserted in *ADIA* and continue to believe that the Act provides for no relief in the form of payments from the Supersedeas Fund for medical expenses ultimately determined to be unreasonable or excessive. Instead, I believe that the employer should be entitled to a credit for such expenses against future compensation and that such relief should be

retroactive to the date the petition to review medical expenses was filed. I must admit that I can find no express language in the Act authorizing this relief; on the other hand, no statutory language precludes it either. While Section 306(f) disallows self-help in the form of unilateral cessation, many employers are, nonetheless, resorting to such action because they are aware that since the Act provides no penalty, and since there is no hope for reimbursement if they continue to pay, they have nothing to lose.

That brings us to the policy considerations and to the reason I have written this comprehensive opinion. Under the current system claimants are facing the unilateral cessation of medical expense payments for what may be legitimate medical treatment because the Act provides for no sanction against employers' self-help techniques. This forces claimants, who often can ill afford it, to litigate to obtain the retroactive credit they are *always* entitled to under *Boehm/Johnson.*

The situation is equally unfair to employers because even if they act nobly and continue making payments which they believe are medically unjustified or excessive while litigating their petition to review medical expenses, they can receive no reimbursement or credit for payments made which are ultimately found to have been excessive or unreasonable. And, we cannot ignore the fact that these penalty petitions are NOT being disposed of swiftly. It is not uncommon for a year or more to go by before a decision is rendered.[6] Medical treatment is undeniably expensive; yet, we compel employers to make payments for services ultimately determined to be medically unnecessary or excessively costly without providing them any ultimate and legitimate alternate relief.

Reform is needed. Whether it should be in the form of a mechanism to compel swift decisions on petitions to review medical expenses, an amendment allowing for credit against future compensation, a requirement that medical expenses for

**6.** For example, in *Boehm,* the employer filed a petition challenging medical expenses on April 5, 1985. The referee disposed of it on April 6, 1987. And, while he allowed the employer relief retroactive to June 11, 1986, that determination was reversed by this Court. Thus, the employer made payments for two full years.

workmen's compensation must be on par with payments made by third party insurers such as Blue Cross and Blue Shield, or some other remedy I have not envisioned, is a matter for the legislature. But whatever the solution, I implore that body to act swiftly to remedy this growing problem.