643 A.2d 147

Thomas SAILMAN, Petitioner,

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (CONTROL AIRE MECHANICAL), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 1, 1994.

Decided May 26, 1994.

Reargument Denied July 20, 1994.

Petition for Allowance of Appeal Denied Nov. 30, 1994.

Thomas P. Pfender, for petitioner.

Mark L. Mazzanti, for respondent.

Before DOYLE and McGINLEY, JJ., and KELTON, Senior Judge.

DOYLE, Judge.

Thomas Sailman appeals an order of the Workmen's Compensation Appeal Board which affirmed a referee's decision granting the petition of Control Aire Mechanical (Employer) to modify Sailman's total disability benefits to partial disability.

On September 28, 1988, Sailman sustained a back injury in the course of his employment as a heating, ventilation, and air conditioning mechanic. Employer filed a notice of compensation payable, and Sailman began to receive total disability benefits at the maximum rate of $377.00 per week, based on an average weekly wage of $808.08.

On April 26, 1990, Employer filed a petition to modify Sailman's benefits on the basis that Sailman had sufficiently recovered from his injury so that he was capable of some type of employment. Sailman filed an answer to Employer's petition denying all material allegations therein. Hearings were conducted and the following relevant evidence was presented to the referee.[1]

Sailman introduced the expert testimony of Dr. Larry Kramer and Dr. Corey Ruth who both testified that Sailman was suffering from back strain and from herniated and bulg-

---

1. Employer filed a request for a supersedeas which, after a hearing, was denied on June 26, 1990. However, after a second hearing, the referee reconsidered Employer's supersedeas request and granted Employer a reduction from total disability to a partial disability rate of $245.40 per week as of December 4, 1990. This case was then reassigned to a second referee who conducted additional hearings and rendered the final order at issue in this matter.

ing discs, and that, as a result of those problems, he was unable to return to any type of employment. Employer presented the testimony of Dr. Eric Mitchell who testified that, while Sailman had chronic lumbar strain and sprain, Sailman was nevertheless capable of performing medium level work with the following limitations: lifting from twenty-one to fifty pounds; standing from four to six hours; sitting from five to eight hours; and occasional bending and squatting. Dr. Mitchell proscribed heavy work and testified that Sailman could not perform his pre-injury job. The referee accepted the testimony of Dr. Mitchell and rejected the testimony of Drs. Kramer and Ruth.

Employer also introduced evidence of six available positions which were approved by Dr. Mitchell as being within Sailman's physical capacity. The referee found as fact that Sailman failed to respond to three of those jobs in good faith.[2] The three jobs were as follows: (1) machine shop operator at Ametek, Inc.; (2) security guard at Firm Security Systems; and (3) heating mechanic at Jacobs Heating and Air Conditioning Co. The security job with Firm Security Systems was first presented to Sailman on September 7, 1989, and the heating mechanic position at Jacobs Heating was first offered to Sailman on November 8, 1989. While the Ametek position was not offered to Sailman until January 19, 1990, the referee made a specific finding that *all three* jobs were still available to Sailman on that date.

The referee, taking the salary level of the Ametek job, the highest paying available job at $12.55 per hour, determined that Sailman had an earning capacity of $502.00 per week. Subtracting $502.00 from his average weekly wage of $808.08, the referee concluded that Sailman had a partial loss of earnings of $306.08.

On the basis of these underlying facts, the referee granted Employer's petition for modification as of January 19, 1990, and directed that Sailman's compensation be reduced to a partial disability rate of $204.05 per week ($808.08 − $502 =

2. Sailman applied for the remaining three positions, but he was not hired.

$306.08 \times 2/3 = \$204.05). Sailman appealed to the Board which affirmed the referee. This appeal followed.

Sailman raises the following issue for our review: "Where the Referee found that the claimant's benefits should be reduced upon a specific suitable job offer made available to him on January 19, 1990, did the referee err as a matter of law in failing to select the job first made available to him in which he failed to act in good faith." (Claimant's brief at 3.)

In *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), our Supreme Court established the following procedure to govern the return to work of injured employees:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance....

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

*Id.* at 252, 532 A.2d at 380. In the present case, Sailman does not dispute the referee's determinations that Employer showed a change in his physical condition, discovered three open positions within his physical limitations, or that his benefits must be modified because he acted in bad faith by failing to apply for those positions. Therefore, it is clear that Employer established its right to modify Sailman's benefits under *Kachinski*.

Sailman argues, however, relying on *Associated Plumbing & Heating v. Workmen's Compensation Appeal Board (Hartzog)*, 126 Pa.Commonwealth Ct. 618, 560 A.2d 865 (1989), that the referee was required to calculate the modification of his benefits based on the **first** available job which he failed to

pursue, the security guard position, which paid only $4.25 per hour. In Sailman's view, the referee erred in using the $12.55 per hour salary of the Ametek position, which was the last position he failed to pursue, to calculate the modification of his benefits.

In *Associated Plumbing,* an employer established its right to modify the claimant's benefits under *Kachinski* and referred the claimant to eleven positions which it asserted were within the claimant's abilities. This Court determined that the employer met its burden of proving that three of the eleven jobs discovered by employer were available to the claimant and that the claimant failed to apply for those jobs. Two of the jobs, both at Z & L Lumber, became available on March 2, 1984; the third job, a telemarketing position with Sears and Roebuck, became available on March 26, 1984. Faced with the problem of which job to use as the basis for modifying the claimant's benefits, we decided that issue as follows:

> We are of the opinion that the modification of Claimant's benefits must be effective as of the date of the first job he did not apply for was available. Here, that date is March 2, 1984. However, there were two jobs available on that date . . . one at an established wage of $3.45 per hour, and the other, a salaried position paying between $10,000 and $12,-000 per year. . . . [W]e conclude, based on the facts of this case, that the calculation of Claimant's modified benefits must be based upon the minimum number of hours per week, 24, which the Claimant could have worked in the lower paying cashier position, since that position is generally representative of the type of job referrals Claimant was receiving from the Employer.

*Id.* at 626–27, 560 A.2d at 869 (footnote omitted). The Court specifically stated that, in reaching the above result, it was attempting to balance the interests of both the employer and the claimant to reach an equitable result. *Accord Miller v. Workmen's Compensation Appeal Board (Fischbach & Moore),* 160 Pa.Commonwealth Ct. 589, 635 A.2d 709 (1993).

In a subsequent case, *Roadway Express, Inc. v. Workmen's Compensation Appeal Board (Allen)*, 152 Pa.Commonwealth Ct. 318, 618 A.2d 1224 (1992), the claimant had been referred to sixteen jobs from November of 1984 to March of 1988 and claimant failed to apply for any of them. The referee when modifying claimant's benefits, refused to consider any of the jobs offered to the claimant before September of 1987 on the basis that those jobs were too remote in time to be probative. The referee modified the claimant's benefits as of September 27, 1987, based on a position available on that date. On appeal, this Court, relying on *Associated Plumbing* and *Barnes and Tucker Co. v. Workmen's Compensation Appeal Board*, 39 Pa.Commonwealth Ct. 123, 394 A.2d 1052 (1978), held that when a claimant fails to pursue a job referral in good faith, modification of the claimant's benefits is effective on the date the first job refused by the claimant was available. Hence, we remanded for the referee to determine the date on which the first job claimant refused was available, even if that job was first offered in 1984.

■ Both *Associated Plumbing* and *Roadway Express* are distinguishable from the instant case, since the referee here found as fact that, while the security guard position became available in September of 1989, all *three* positions for which Sailman did not apply remained open and were available to him on January 19, 1990, the date the referee used to begin the modification of Sailman's benefits. That distinction is critical because Sailman was able to apply for every available position, including the security job, on the date the referee modified his benefits. In contrast, nothing in *Associated Plumbing* or *Roadway Express* even suggests that any of the positions presented to the claimants in those cases remained open and available on the date when their benefits were modified. Therefore, because all three positions were open to Sailman on the date the referee modified his benefits, we hold that the referee could choose among those positions when determining which position to utilize for calculating the reduction of Sailman's benefits.

■ We then must consider whether the referee properly decided to choose the Ametek job as a basis for modifying Sailman's benefits. Because the Ametek position had the highest salary of any of the three positions offered to the Claimant, we do not believe that the referee erred in assuming that Claimant would have chosen that job because it *was* the highest paying available position. Moreover, the Ametek position was a skilled manufacturing job and was representative of the type of job Employer had been finding for Claimant. *See Associated Plumbing.* We conclude, therefore, that the referee used proper reasoning and correctly based the modification of Sailman's benefits on the Ametek position.

Affirmed.

## *ORDER*

NOW, May 26, 1994, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.