561 A.2d 349

**HOLMES HOUSE and PMA Insurance Company, Petitioners,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (SHANAHAN), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 21, 1989.

Decided June 27, 1989.

Stuart W. Benson, III, Dion G. Rassias, Dickie, McCamey & Chilcote, P.C., Pittsburgh, for petitioners.

Michael P. Sosso, Fricker & Associates, Pittsburgh, for respondents.

Before DOYLE and McGINLEY, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

Holmes House and PMA Insurance Company (Employer) appeal the order of the Workmen's Compensation Appeal Board (Board) which reversed a referee's decision granting

Employer's modification petition and reinstated Mary Jane Shanahan (Claimant) to total disability benefits. We affirm.

Claimant was employed as a nurse's aide. On August 15, 1979, Claimant suffered a low back strain while bending over to assist a patient. She received benefits for total disability pursuant to a notice of compensation payable. Claimant returned to work on August 8, 1980. She claimed to have suffered another low back strain while lifting a patient on August 11, 1980, and has not worked since.

Two petitions were filed in this case and consolidated by the referee. Employer filed a petition for termination, modification or suspension accompanied by a physician's affidavit stating that all disability had ceased as of March 14, 1980. Claimant filed a new claim petition alleging she had injured her back on August 11, 1980, and was totally disabled since that date according to the testimony of her physician, Doctor Samuel Sherman, who examined Claimant on March 18, 1981.

Referee Darkins, in a decision dated November 18, 1982, found that all Claimant's disability had ceased on March 14, 1980, and granted Employer's termination petition. The referee found that Claimant had subsequently suffered a recurrence of disability from her back injury of August 11, 1980. However, the referee found that such disability did not start from the date of the incident or "injury" causing the recurred disability, August 11, 1980, but from the date of Claimant's examination with her treating physician, March 18, 1981.[1] The referee then reinstated compensation as of March 18, 1981.

Employer also presented the testimony of a rehabilitation counselor, Antonia Scarlata, who first interviewed Claimant on June 21, 1982. Employer's counselor testified she had found five job openings described to Claimant involving light or sedentary work. Referee Darkins found that none

1. Claimant's attending physician was Dr. Samuel Sherman who was succeeded by Dr. Frank Sessoms. Finding No. 17, R.R. 285a.

of these was applied for by Claimant.[2] The referee accepted the counselor's testimony, finding that there

> existed alternative available work within the Claimant's limitations for all periods of the Claimant's disability wherein she would have an earning power of $140.00 per week, thus leaving the Claimant with a residual loss of earnings of $33.25, entitling the Claimant to partial disability benefits of $22.17 per week from March 18, 1981 through April 27, 1981 and from August 25, 1981 onward in accordance with the Workmen's Compensation Act.

Finding No. 15, R.R. 286a.

The referee's final order modified Claimant's reinstated compensation by reducing benefits from $115.50 per week to $22.17 per week as of March 18, 1981 through April 27, 1981 and from August 25, 1981 to the present. R.R. 286–287a. It should be noted that Employer's counselor did not even interview Claimant until nearly a year after the dates contained in the referee's order.

Claimant appealed to the Board which affirmed the referee's decision by opinion dated January 12, 1984. However, the Board noted that the referee had made no order for costs, counsel fees and medical bills and remanded for this purpose. On remand the referee[3] approved a supplemental agreement covering these issues which also stated "the parties reserve and do not waive any jurisdiction and substantive matters that may be raised by subsequent proceedings." (R.R. 320a). Claimant's counsel noted, also, that "We do not waive our right to appeal." R.R. 317a.

Claimant appealed this decision to the Board. By opinion of June 3, 1988, the Board reversed, departing from its own first opinion apparently on the basis of the Supreme Court's decisions in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987) and *Farkaly v. Workmen's Compensation*

---

2. This finding is questionable, R.R. 188a. Also, the testimony of the rehabilitation counselor was deemed inadequate by the Board. R.R. 325a. See discussion later in this opinion.

3. Referee Albert S. Diaz was substituted for Referee Darkins.

*Appeal Board (Baltimore Life Insurance Co.),* 516 Pa. 256, 532 A.2d 382 (1987), finding Claimant totally disabled as of August 11, 1980. The Board rejected the testimony of Employer's counselor, holding the physical descriptions supplied for each job were inadequate for the referee to form an opinion as to whether Claimant was capable of performing the job.[4] The Board acknowledged that it was dealing with issues on which it had previously issued an opinion, and our first concern on appeal is whether the Board has the power to do this.

Employer asserts the Board's second order is barred by *res judicata,* citing *Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board (DeMarco),* 89 Pa. Commonwealth Ct. 41, 491 A.2d 941 (1985). However, in order for *res judicata* to apply, a final appealable order must exist. For example, a supersedeas granted in a case does not bar the referee from reaching a different decision in his final order because the supersedeas is interlocutory and not a final appealable order. *See Knisch v. Workmen's Compensation Appeal Board (Jerome Enterprises),* 113 Pa. Commonwealth Ct. 204, 536 A.2d 856 (1988).

In *FMC Corp. v. Workmen's Compensation Appeal Board (Wadatz),* 116 Pa. Commonwealth Ct. 527, 542 A.2d 616 (1988), we held that a Board order reversing a referee's decision and remanding for a determination of counsel fees to be awarded was interlocutory and not appealable. It follows that in the instant case the Board's first order was interlocutory and thus not a final appealable order for the purposes of *res judicata.* The Board was never divested of jurisdiction in this case until Employer appealed its second order, the instant appeal to this Court. While the case is under the Board's jurisdiction we will not interfere with the

---

4. As of the date of Referee Darkins' decision, November 18, 1982, there was a view sometimes asserted that "availability of employment" for a partially disabled claimant could be established by showing the mere "existence" of light jobs considered to be within claimant's capabilities. This view has been rejected by this Court, *Backowski v. Workmen's Compensation Appeal Board (E.W. Tire Co.),* 93 Pa.Commonwealth Ct. 339, 503 A.2d 58 (1985), and by the Supreme Court in *Kachinski.*

Board's plenary power to hear and dispose of the case in the manner it sees fit.

■ We next turn to the issue of whether Claimant was disabled, and if so, from what date she was disabled. The claim petition which the referee granted on the basis of recurrence,[5] which grant the Board affirmed in both opinions, alleges an injury on August 11, 1980. Claimant underwent either treatment or examination from no less than six doctors and one chiropractor in this case. However, the referee found the testimony of Dr. Samuel Sherman credible and Dr. Sherman did not treat Claimant until March 18, 1981, which the referee fixed as the date of disability in the form of a recurrence.

There is simply no support in the record for a finding that Claimant suffered a work related disability on March 18, 1981. It is undisputed that Claimant had not worked since August 11, 1980. It is impossible for the Claimant to suffer a work related cervical sprain more than seven months after she left work. Dr. Sherman testified that Claimant's injury on August 11, 1980 caused a recurrence of Claimant's inability to continue her work. (Deposition of Dr. Samuel Sherman taken 8/4/81. R.R. 56a). Dr. Sherman's report specifically references an "injury" on August 11, 1980 when Claimant was lifting a patient out of a wheelchair. (R.R. 67a). The referee made an obvious mistake in fixing the date of disability and the Board acted correctly in remedying it. R.R. 326a.

■ Having established that Claimant was totally disabled as of August 11, 1980, we next turn to the issue of whether there was thereafter a reduction to partial disability and, if so, whether work was shown to be available to Claimant sufficient to warrant a reduction in her benefits to those for partial disability. The referee found that Claim-

5. Obviously, and rightfully, the referee treated the claim petition as a petition for recurrence as if filed for reinstatement under Section 413 of the Act, 77 P.S. § 772. *Bell Telephone Co. v. Workmen's Compensation Appeal Board (Rothenbach),* 98 Pa. Commonwealth Ct. 332, 511 A.2d 261 (1986).

ant's disability from the original injury of August 15, 1979 terminated on March 14, 1980, but recurred causing disability on and after March 18, 1981. Finding No. 14, R.R. 286a, and that there was "existing alternative available work within Claimant's limitations for all periods of Claimant's disability." Quoted above from referee's Finding No. 15, R.R. 286a. Claimant's attending physician, Dr. Frank E. Sessoms, gave an unequivocal opinion that Claimant was permanently disabled from the original injury of August 11, 1980. R.R. 128a. On cross-examination, he laid down stringent limitations on what Claimant could do. R.R. 138a.[6] As regards available work that Claimant could do, the referee apparently relied upon the testimony of Ms. Antonia L. Scarlata. Since she did not even meet Claimant until June 21, 1982, with no job interview with Claimant until July 15, 1982, R.R. 182a, 186a, Employer concedes that the referee erred. Obviously, no work could have been indicated as available before July 15, 1982.

Employer's counselor did not send the job descriptions to either Employer's or Claimant's treating physicians. No physician ever saw a job description or verified that the proposed job was within the Claimant's physician capabilities. No physician ever approved the jobs. When asked whether the jobs' physical demands were within the limitations set for Claimant by Dr. Sessoms, Employer's vocational counselor stated that in *her* opinion they were.[7] (Deposition of Antonia Scarlata taken 9/1/82 at 9–10, R.R. 187a–188a.)

However, the Board in its second opinion found the descriptions Employer's vocational counselor gave of the various jobs "made available" to Claimant legally insufficient for the referee to form an opinion as to whether Claimant was able to perform the job. We agree that the

6. We note, however, that Dr. Sessoms gave no testimony of any *change* from total to partial disability as specified in *Kachinski* as the first step in reducing liability.

7. We note that this witness had no medical qualifications.

procedures utilized by Employer's vocational counselor were deficient.

Claimant was cleared by Dr. Frank E. Sessoms to do sedentary work with a lifting limit of 25 pounds and no prolonged standing or sitting. Having read Dr. Sessoms' deposition of February 17, 1982, Employer's vocational counselor then interviewed Claimant and set out to find available work within these limitations. The counselor's practice was to locate open jobs through a mailing list or want ads, phone the proposed employer and conduct a telephone interview in order to find out the specifics and physical requirements of each position. She then typed up a job summary and mailed it directly to Claimant.

■ Having carefully studied, as did the Board, the testimony of Ms. Scarlata, Employer's vocational counselor, and having reviewed again the Supreme Court's decision in *Kachinski*, we must agree with the Board's conclusion of the inadequacy of her testimony to support the Employer's burden to establish opportunities available to Claimant in light of her physical limitations within the guidelines laid down in *Kachinski*.[8] Item 1 of these guidelines requires that the employer "who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition." We fail to see any testimony establishing such a change. Furthermore, however, if the delineation by Dr. Sessoms of possible things that the Claimant might be able to do might be treated as an indication of some possibility for employment, on which an employer referral, Item 2 of *Kachinski*, could be based a "medical clearance, *e.g.*, light work, sedentary work, etc.," *Kachinski*, we note that the

8. An example of the inadequate "referral" by Ms. Scarlata appears in her testimony as follows:

A. When I told her to call I told her I wasn't sure whether he had any exact specific openings right now, but my experience in the past is that he has a lot of turnover, that he does accept applications. When he has an opening he does call the people who put in applications. So, I told her I wasn't sure if he had anything right now but she really should give him a call. R.R. 193a.

first suggested employer was the University of Pittsburgh. This effort failed, as further testimony is that all of these suggested open jobs there had been filled and, while the referee stated in his Finding No. 13 that Claimant did not apply for any of these jobs, the record does not support this statement. In fact, the vocational counselor testified that Claimant did file an application with this proposed employer. R.R. 188a. The jobs were filled without any apparent effort to honor Claimant's application. Other suggested job openings were similarly not proved to be available to Claimant.

As for the second proposed employer, Carnegie Mellon University, Ms. Scarlata testified that she spoke over the telephone with an interviewer and that she then spoke with Claimant advising her to make an application, but could not remember whether Claimant made the application or "got to Carnegie Mellon or not." R.R. 189a.

The third alleged job opportunity was as a Cashier in the Bigelow Garage, but Ms. Scarlata was uncertain whether this job might require the parking of automobiles which apparently admittedly Claimant cannot do; and, also, Ms. Scarlata did not know whether or not Claimant applied for this suggested place of employment. R.R. 190a–191a. In fact, as to this proposed employment, Ms. Scarlata on cross-examination stated:

Q. What it boils down to, you did not speak to someone of authority at the Bigelow Garage as to what the position was that was being offered in the paper?

A. That is correct.

R.R. 236a.

There is no indication whether or not Claimant submitted an application for a position with Bigelow Garage.

As regards the next proposed employment at the North American Training Academy, Ms. Scarlata testified that she informed Claimant that there was a job available at the Academy, and it developed that Claimant investigated the availability of this employment and found that it was at a

great distance requiring many changes of transportation. Ms. Scarlata admitted that she had not talked to any person in authority or the person who was offering the position by an advertisement, and Ms. Scarlata also admitted that she did not know that the location of the place was so distant when she suggested the possible job opening to Claimant. Furthermore, Ms. Scarlata testified she did not inform that prospective employer's receptionist that Claimant had a bad back. R.R. 243a.

Also, in the testimony about the possibility of employment by a Telephone Answering Service, Ms. Scarlata testified that she made a telephone call; that the person she was trying to reach was not available; and that, in fact, she did not know whether there was an opening there at the time. R.R. 244a.

Further weaknesses in the counselor's testimony, to which the Board obviously referred, include much of her thinking; that her "opinions" were frequently based on assumptions; that hours of such employments were not listed or communicated to the Claimant; that the possibility of employment at the University of Pittsburgh was by inquiry at the end of July, whereas admittedly, Claimant was in the hospital from July 23 to August 5, R.R. 220a–221a, and was on medication in August causing her to be "sleepy," R.R. 223a. Ms. Scarlata testified further that she knew Claimant was now placing applications for employment, apparently with no success; in fact, Claimant admittedly was on many forms of medication when released from the Hospital, many of which were not even known to the vocational counselor.

Our conclusion that the Board, properly analyzed and characterized the testimony of the vocational counselor whose testimony the Employer relies on, holding it to be inadequate to satisfy the availability requirements, and that the counselor's treatment of the Claimant in her procedure to demonstrate the availability of employment within Claimant's capabilities could well be aptly characterized by the statement of Mr. Justice McDermott in *Kachinski* that:

"One injured at work, stranded into partial disability, deserves more than a generic list describing where he might find some suitable work."

Accordingly, finding no error in the decision and order of the Board, we will affirm.

## ORDER

NOW, June 27, 1989, the order of the Workmen's Compensation Appeal Board at No. A–91012, dated June 3, 1988, is hereby affirmed.