FRIEDMAN, Judge.
Roadway Express, Inc. (Employer) appeals from an order of the Workmen’s Compensation Appeal Board (Board) affirming the referee’s[1] decision to grant Scott Palmer’s (Claimant) Claim Petition for specific loss benefits and to deny Employer’s Petition for Suspension, but reversing the referee’s decision to deny Employer’s Petition for Modification.
Claimant was employed by Employer as an outbound dock supervisor when, on March 2, 1987, a forklift operated by Claimant skidded off the loading dock, fell about five feet to the surface below and landed on Claimant’s feet, crushing them. (R.R. at 71a-72a.) Claimant was taken to the emergency room at Pocono Hospital, where Frank J. Dracos, M.D., performed surgery on Claimant’s feet.[2] (R.R. at 118a-19a.) Claimant received compensation benefits pursuant to a Notice of Compensation Payable and has not worked for Employer since the date of the injury.
Dr. Dracos treated Claimant over a period of two and a half years. (R.R. at 120a.) Six months after the accident, Claimant regained his ability to walk. (R.R. at 120a.) After eighteen months, the fractures in his feet had healed, but Claimant’s right foot had lost its arch and had developed arthritis. Claimant’s left foot had lost its fat pad, which caused a pressure sore, and the first metatarsal on Claimant’s left foot was shorter than normal. (Referee’s Finding of Fact, No. 5; R.R. at 121a-22a.) Two years after the accident, in spite of intensive physical therapy, Claimant’s condition had not improved. (R.R. at 124a-25a.) Thereupon, Dr. Dracos prescribed an orthotie, an arch support, for Claimant’s right foot. (Referee’s Finding of Fact, No. 5; R.R. at 126a.) When Dr. Dra-cos last examined Claimant on September 6, 1989, Claimant’s condition was static. (R.R. at 127a.)
On October 11,1989, Claimant began work as a traveling carpet salesman for a new employer in Charlotte, North Carolina.[3] (R.R. at 251a.) On that same date, Claimant *14 filed a Claim Petition for specific loss benefits, alleging that, as a result of the March 2, 1987 accident, Claimant lost the use of his right foot for all practical intents and purposes. Employer filed a timely answer denying the material allegations of the claim.[4]
On January 5,1990, Employer filed a Petition for Modification, alleging that Claimant returned to work on November 1, 1989. Claimant filed a timely answer admitting that he returned to work with a new employer and agreeing to provide information about Claimant’s wages to Employer.
On January 16, 1990, Employer filed a Petition for Suspension, alleging that, on October 20, 1989, Employer offered Claimant a dispatcher job in Greenville, South Carolina at a salary equal to or greater than Claimant’s pre-injury wages but that Claimant rejected the offer because he was not interested in work as a dispatcher. Claimant filed a timely answer denying the material allegations of the suspension petition and asserting that he turned down the dispatcher job because it was not within his physical capacity and because it was not within reasonable proximity to his residence. All petitions were consolidated and hearings were held before a referee.
At the hearings, Claimant testified on his own behalf and presented the deposition testimony of Dr. Dracos, who opined that, as a result of the March 2, 1987 work-related injury, Claimant sustained a permanent 80% loss of the physical functioning of his right foot. (Referee’s Finding of Fact, No. 5.) Dr. Dracos also testified that, based solely on the injuries to Claimant’s left foot, Claimant could not return to his pre-injury job on the loading dock.[5]
Employer presented the deposition testimony of Donald G. Joyce, M.D., Keith J. Close, Thomas Sharrar and Eugene McHugh. Dr. Joyce agreed with Dr. Dracos that Claimant’s injury was permanent and that Claimant would have significant limitations in the use of his right foot. (Referee’s Finding of Fact, No. 6.) The three remaining Employer witnesses testified regarding the availability of the dispatcher job in Greenville, South Carolina.[6]
*15 Based on this evidence, the referee found that, as a result of the March 2, 1987 accident, Claimant lost the use of his right foot for all practical intents and purposes[7] and that the problems with Claimant’s left foot precluded him from returning to his pre-injury job. (Referee’s Findings of Fact, Nos. 5 and 7.) The referee concluded therefrom that Claimant is entitled to 250 weeks of compensation for his specific loss, plus compensation for a healing period of 25 weeks, payable when disability benefits cease. (Referee’s Conclusion of Law, No. 4.) The referee also found that the Greenville, South Carolina dispatcher position was not available to Claimant and, therefore, Employer could not prevail on its suspension petition.[8] However, the referee decided that because Claimant was working, Employer was entitled to a reduction of benefits pursuant to its modification petition. (Referee’s Conclusion of Law, No. 3.)
Employer appealed the referee’s decision to the Board, which amended the amount of compensation payable pursuant to a stipulation of Claimant’s wages presented to the Board by the parties. However, the Board affirmed the referee’s decision in all other respects.
On appeal to this court,[9] Employer argues that the Board erred in affirming portions of the referee’s decision because there is not substantial evidence in the record to support the referee’s finding that (1) Claimant lost the use of his right foot for all practical intents and purposes; (2) Claimant is totally disabled solely as a result of the injuries to his left foot; and (3) the dispatcher job was not available to Claimant.[10]
*16 I. Specific Loss
Employer first contends that the record does not contain substantial evidence to support the referee’s finding that Claimant has suffered the permanent loss of his right foot for all practical intents and purposes.[11] We disagree.
Section 306(c) of The Pennsylvania Workmen’s Compensation Act (Act), Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 513, provides in pertinent part:
For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows:
[[Image here]]
(4) For the loss of a foot, sixty-six and two-thirds per centum of wages during two hundred fifty weeks.
In order for a claimant to receive specific loss benefits under section 306(c) of the Act, it is not necessary that the claimant’s injured member be of absolutely no use; rather, the proper test is whether the claimant has suffered the permanent loss of use of the injured extremity for all practical intents and purposes.[12] Klaric v. Workmen’s Compensation Appeal Board (National Castings, Div. Midland Ross Corp.), 71 Pa.Commonwealth Ct. 91, 455 A.2d 217 (1983). Whether a claimant has lost the use of a body part is a question of fact. Id. As factfinder, the referee makes credibility determinations, resolves evidentiary conflicts and weighs the evidence presented; in doing so, the referee may accept or reject the testimony of any witness, including medical experts, in whole or in part. Id.
Here, Claimant testified that he has lost motion in his right foot and, as a result, cannot climb or run due to pain. (Referee’s Finding of Fact, No. 4.)[13] The record indicates further that Claimant, a former triathlete [14] and marathon runner, cannot stand, walk, run or ride a bike for prolonged periods of time; cannot climb a ladder; and cannot walk up an incline or on uneven surfaces without difficulty. (R.R. at 93a-95a, 134a.) Claimant can drive but, because of his injuries, he had to change to a vehicle with automatic transmission and cruise control. (R.R. at 95a-96a.)
In addition, both medical experts testified that Claimant’s right foot is permanently and visibly deformed, in need of an orthotic device; that Claimant has permanently lost *17 significant use of his right foot due to arthritis, the fusion of bones and the complete loss of his arch; and that the loss of use is severe enough that Claimant cannot return to his pre-injury job on the loading dock. (R.R. at 126a, 131a, 140a, 163a, 166a, 181a-82a, 184a-85a.)
The medical experts, however, disagree regarding the extent of Claimant’s permanent loss of the use of his right foot. Employer’s medical expert, Dr. Joyce, opined that Claimant’s permanent loss was only a 50% impairment and that such loss, in his opinion, does not constitute a loss for all practical intents and purposes. (R.R. at 166a, 187a-88a.) However, a fair reading of the referee’s decision shows that the referee, in his role as factfinder, rejected this testimony.[15] Instead, the referee accepted the testimony of Claimant’s treating physician, Dr. Dracos, who testified that, as a result of the March 2, 1987 accident, Claimant has suffered an 80% permanent loss of use of his right foot.[16] (Referee’s Finding of Fact, No. 5.)
We believe that a reasonable mind would find the evidence of record here adequate to support the referee’s finding that Claimant lost the use of his right foot for all practical intents and purposes.
II. Total Disability
Employer next argues that there is not substantial evidence in the record to support the referee’s finding that Claimant is totally disabled solely as a result of the injuries to his left foot. We disagree.[17]
Claimant’s pre-injury job required that he work twelve-hour shifts for seven straight days, followed by seven days off. (R.R. at 70a.) Claimant described his duties as an outbound dock supervisor as follows:
A [The job] required me to walk on a concrete dock for the whole shift, ... pulling down tractor-trailer doors ... [and] assisting [with] loading trailers.
[[Image here]]
Q Now, when you were working in a 12-hour shift, was there any opportunity for you to sit during that period of time?
A No ... actually, I had to arrive at the dock an hour before my shift, and I left an hour after just so I could keep up with the workload.
So I was continually on my feet. I didn’t have a chance even to sit down for a break for a lunch.
(R.R. at 69a-70a.) Dr. Dracos then testified:
Q Doctor, even if we take the right foot ... out of the equation ..., based on the injuries to the left foot do you feel that [Claimant] could return to work as a dock worker in the job that he had described to you prior to his injury?
A He could not return to work as a dock worker because that entails heavy and very heavy labor....
[[Image here]]
Q If a job required [Claimant] to stand for 12 to 14 hours on his left foot, would he be able to do that?
[[Image here]]
*18 A I don’t think he’d be able to stand 12 hours consistently without any break or [without] being able to elevate that left foot.
(R.R. at 138a-39a.) Dr. Draeos also testified that Claimant has lost as much as 60% of the use of his left foot.[18] Dr. Joyce, Employer’s own medical expert, agreed that Claimant suffers from a 60% permanent physical impairment of his left foot. (R.R. at 166a.)
We believe that such evidence constitutes substantial evidence to support the referee’s finding that Claimant is totally disabled from his injury to the left foot.
III. Job Availability
Finally, Employer argues that the referee’s finding that the dispatcher job was not available to Claimant is not supported by substantial evidence in the record. Again, we disagree.
Our Supreme Court in Kachinski v. Workmen’s Compensation Appeal Board (Vepco Construction Co.), 516 Pa. 240, 252, 532 A.2d 374, 380 (1987), set forth the following criteria governing an employer’s burden for proving work availability for injured workers:
1. The employer who seeks to modify a claimant’s benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.
2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, e.g., light work, sedentary work, etc.
3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).
4. If the referral fails to result in a job then claimant’s benefits should continue.
With respect to the second prong, Kachinski requires that the position be “available:”
[A] position may be found to be actually available, or within the claimant’s reach, only if it can be performed by the claimant, having regard to his physical restrictions and limitations, his age, his intellectual capacity, his education, his previous work experience, and other relevant considerations, such as his place of residence.
Kachinski, 516 Pa. at 251, 532 A.2d at 379. A referee must have some latitude in determining what is available to a specific claimant; a “totality of the circumstances” approach should be applied to individual fact patterns to determine what is appropriate for a reasonable person in the position of the claimant. Goodwill Industries of Pittsburgh v. Workmen’s Compensation Appeal Board (Friend), 158 Pa.Commonwealth Ct. 292, 631 A.2d 794 (1993).
Here, Claimant, who resides in Charlotte, North Carolina, was offered a dispatcher job in Greenville, South Carolina, 120 miles away from Claimant’s residence. As a dispatcher, Claimant would have to work twelve-hour shifts for seven consecutive days, followed by seven days off. (R.R. at 236.) Although both medical experts testified that Claimant could physically perform the work duties of a dispatcher, Dr. Joyce, Employer’s own medical expert, testified that Claimant could not perform the work duties of a dispatcher if he was also commuting 120 miles to and from work each day.[19] (R.R. at 132a-33a and *19 173a-74a.) Dr. Joyce further testified that if Claimant took the dispatcher job, Claimant would mentally break down within a week because of a psychological overlay with regard to his injuries.[20] (R.R. at 174a-75a.)
We believe that this evidence is sufficient to support the referee’s finding that the dispatcher job in Greenville, South Carolina was not actually available to Claimant.[21]
IV. Conclusion
We conclude that the record contains substantial evidence to support the referee’s finding that Claimant lost the use of his right foot for all practical intents and purposes, that Claimant is totally disabled as a result of the injuries to his left foot and that the dispatcher job was not available to Claimant. Therefore, the Board did not err in affirming those portions of the referee’s decision.
Accordingly, we affirm.

ORDER

AND NOW, this 11th day of May, 1995, the order of the Workmen’s Compensation Appeal Board, dated August 1, 1994, is AFFIRMED.

. Referees are now called Workers' Compensation Judges under the new amendments to the Workers' Compensation Act effective August 31, 1993. However, because this case was before the Referee prior to the effective date of those amendments, we will refer to the Referee as such and not as Workers' Compensation Judge.

. Dr. Dracos’ preoperative diagnosis was: severe crush injuries to both feet, including an open fracture of the right distal tibia, an open fracture of the first metatarsal of the right foot and a closed fracture of the first metatarsal of the left foot. (R.R. at 155a.)

.Claimant moved to Charlotte, North Carolina in March of 1988. (R.R. at 68a.) The referee found, pursuant to a stipulation by the parties, that Claimant obtained employment there in November of 1989. (Referee's Finding of Fact, No. 3.) However, the stipulation states clearly that Claimant’s new employment began on October 11, 1989. (R.R. at 251a.)

. Employer did not dispute that Claimant is totally disabled as a result of work-related injuries to both feet. However, Employer denied liability for specific loss of Claimant’s right foot.

. The referee summarized the testimony presented by Claimant as follows:
4. Regarding specific loss, Claimant presented testimony about his injury and his present disability. His testimony is that he continues to have severe problems with his right foot and that he has lost the motion of the right foot due to the fact that the bones in his foot were crushed and that he cannot climb or run due to pain. For work he must use an orthotic in his shoes and wears a special type shoe since this injury.
5. Dr. Frank Dracos, Claimant’s treating physician, testified regarding the injury and described the crushing injury to both feet and the subsequent treatment. It was his opinion (hat the left foot had a good prognosis but the right foot had a poor prognosis, due to the type of injury, where Claimant has developed arthritis in his right foot which limits the activity of that foot and the loss of the arch of the right foot. Literally, the right foot was spread out and the arch was collapsed, disrupting the ligaments and collapsing of the tarsalevicular bone. It was his opinion that the Claimant did need an arch support on the right side, that the orthotic supports his foot since his arch had collapsed and that the Claimant had lost the mobility of his foot with resulting severe limitations and restrictions as to what Claimant could do with it, thus, causing an 80% physical impairment and loss of physical function of that right foot. Finally, the Doctor testified that Claimant has problems with his left foot which would prevent him from returning to work at his previous employment.
[[Image here]]
8. [Addressing Employer's Petition for Suspension,] ... Claimant indicated some willingness to relocate if he could find a sales position which would increase his salaty and would give him the ability to work at his own pace. It was his testimony that he did not believe he would be capable of performing the job as a dispatcher due to the 12 hour shift and working around the equipment, coupled with a fear of returning to his former work environment. In order for him to accept this position, Claimant would have to travel 120 miles each way.
(Referee’s Findings of Fact, Nos. 4-5, 8.)

.The referee summarized the testimony presented by Employer as follows:
6.Additional medical testimony of Dr. Donald Joyce was presented and he had claimant examined at the request of [Employer], He agreed with the diagnosis of bilateral crush injuries and he felt that the patient’s use of the right foot was limited and that he could not run or climb with that foot. He also agreed *15 with Dr. Dracos that his condition was permanent. [Employer’s] medical witness agreed that the patient does have significant limitations in the use of his right foot.
[[Image here]]
8.As it addresses the Petition for [Suspension], [Employer] presented the testimony of three witnesses, with regard to the availability of a position for the Claimant as a relay dispatcher in the Greenville, South Carolina Terminal. This job was available on November 1, 1989, when Claimant was residing in Charlotte, North Carolina, which was 120 miles from his location. The job involved seven days per week with 12 hour shifts on each particular day and also requires walking to do physical checks on equipment in the yard....
(Referee’s Findings of Fact, Nos. 6 and 8.)

. The referee found as follows:
7. From this evidence, we find as a fact that Claimant has lost the use of his right foot for all practical intents and purposes.
(Referee’s Finding of Fact, No. 7.)

. We note that the referee’s decision confuses the Petition for Modification and the Petition for Suspension. For example, the referee concluded as follows:
2. The Defendant has failed to meet its burden of proof and its Petition for Modification is denied.
(Referee’s Conclusion of Law, No. 2.) However, Referee's Conclusion of Law, No. 3, states in pertinent part:
Defendant is entitled to a reduction in the amount of benefits payable due to the fact that Claimant presently is working.
(Referee’s Conclusion of Law, No. 3.) From this language, it is apparent that Referee’s Conclusion of Law, No. 2, should have stated that Employer’s Petition for Suspension is denied.

. Our scope of review is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; Berks County Home v. Workmen's Compensation Appeal Board (Schnable), 145 Pa.Commonwealth Ct. 582, 604 A.2d 767 (1992).

. Employer also argues that the award of compensation to Claimant for the 25-week healing period is in violation of section 306(d) of The Pennsylvania Workmen’s Compensation Act (Act), Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 513(25) (emphasis added), which states in pertinent part:
Where, at the time of the injury the employe receives other injuries, separate from these which result in permanent injuries enumerated in clause (c) of this section, the number of weeks for which compensation is specified for the permanent injuries shall begin at the end of the period of temporary total disability which results from the other separate injuries, but in that event the employe shall not receive compensation ... for the specific healing period.
We agree with Employer that Claimant is not entitled to receive compensation for a healing period here. Unfortunately, Employer never raised this issue before the Board; thus, pursuant to Pa.R.A.P. 1551, the matter is waived. Williams v. Workmen's Compensation Appeal Board (Montgomery Ward), 127 Pa.Commonwealth Ct. 587, 562 A.2d 437 (1989).
Employer argues that the issue was raised in its brief to the Board. However, that brief in not part of the original record certified and transmitted to this court by the Board. We note that, under Pa.R.A.P. 1926, Employer could have re *16 quested that the Board certify and transmit a supplemental record containing Employer’s brief to this court. However, that was not done here.

. Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Kraushaar v. Workmen's Compensation Appeal Board (Doors, Inc.), 142 Pa.Commonwealth Ct. 69, 596 A.2d 1233 (1991), appeal denied, 534 Pa. 643, 626 A.2d 1160 (1992).

. Whether a claimant has lost the use of a body part for all practical intents and purposes is a mixed question of law and fact. Bauer v. Workmen’s Compensation Appeal Board (RAM Construction Co. and CNA), 102 Pa.Commonwealth Ct. 26, 517 A.2d 568 (1986). Whether a claimant has lost the use of a body part is a question of fact, as is the extent of that loss of use. However, once the factfinder has made a finding in that regard, we must then determine as a matter of law whether the loss is for all practical intents and purposes.

. Employer, relying on Pioneer Machine and Tool Co. v. Workmen’s Compensation Appeal Board (Willis), 145 Pa.Commonwealth Ct. 48, 602 A.2d 442 (1992), and Bakula v. Workmen's Compensation Appeal Board (Budd Company), 134 Pa.Commonwealth Ct. 37, 577 A.2d 961 (1990), argues on appeal that the Board should have remanded this case to the referee for an additional finding with regard to activities that Claimant can perform with his right foot. Employer contends that it is not enough that the referee made a finding with respect to what Claimant cannot do with his right foot. We disagree.
In Pioneer this court, citing Bakula, stated: "In addition to medical testimony, the referee must consider the testimony of claimant as to what he or she can or cannot do with the injured body parts in question.” Pioneer, 145 at 54, 602 A.2d at 445 (emphasis added). This wording does not mandate a particular finding regarding what Claimant can do. Indeed, in Bakula, we simply stated: "Our courts have often looked to the claimant's testimony ... as further support of a finding of loss of use." Bakula, 134 at 41, 577 A.2d at 964. Here, the referee made a finding regarding what Claimant cannot do; we believe that is sufficient under both Pioneer and Bakula.

.A triathlete is an individual who competes in a triathlon, an athletic contest that is a long-distance race consisting of three phases: swimming, bicycling and running. Webster’s Ninth New Collegiate Dictionary 1259 (1991).

. Indeed, Employer's medical expert, Dr. Joyce, testified on cross-examination that he might have confused Claimant's left foot and right foot and, if so, then Claimant has suffered a 60% permanent loss of use of his right foot. (R.R. at 178a-79a.) Moreover, Dr. Joyce admitted that when he examined Claimant, Claimant's right foot might have been in a good period. (R.R. at 177a.)

. This court has affirmed a finding of specific loss where the medical testimony indicated only a 55% loss of use. See Gindy Manufacturing Co. v. Workmen's Compensation Appeal Board, 32 Pa.Commonwealth Ct. 128, 378 A.2d 492 (1977).

. A claimant is entitled to total disability benefits under section 306(a) of the Act in addition to benefits for specific loss under 306(c) where there is a destruction, derangement or deficiency in the organs of other parts of the body. BCNR Mining Corp. v. Workmen’s Compensation Appeal Board (Hileman), 142 Pa.Commonwealth Ct. 588, 597 A.2d 1268 (1991), appeal denied, 530 Pa. 646, 607 A.2d 256 (1992). Thus, if a specific loss injury results in a disability which is separate and distinct from that which normally follows such an injury, and which is the direct result of the injury, then benefits for total disability are allowed in addition to benefits for specific loss. Id. The destruction of other body parts, which a claimant must show, does not include pain, annoyance, inconvenience, disability to work, or anything normally resulting from the permanent injury. Id.

. Dr. Draeos testified as follows:
Q What percentage of physical impairment does [Claimant] have of the left foot?
A He has quite a bit.... [B]ecause of the loss of the fat pad, because of the loss of the length of the first metatarsal, I felt that he had as much as 60 percent loss of the foot.
(R.R. at 138a.)

. Employer contends that the distance from Claimant’s residence to the dispatcher job should not be considered here because willingness to relocate was a condition of employment with Employer; thus, Claimant agreed to a transient lifestyle, which makes Moreno-Leonardo v. Workmen's Compensation Appeal Board (Kozel Engineering), 164 Pa.Commonwealth Ct. 384, 643 A.2d 151 (1994), applicable here. We disagree.
In Moreno-Leonardo, the claimant was working a summer job in Pittsburgh as a construction inspector when she sustained a work-related injury to her back. Shortly thereafter, however, the claimant moved from Pittsburgh to Philadelphia to attend law school. The claimant had applied to law schools in Philadelphia and Pittsburgh, had worked in Pittsburgh as a law clerk, had accepted a job in New York and would be interviewing for jobs in Philadelphia and New York following graduation from law school. We held that, even though the claimant was residing *19 in Philadelphia, because of the claimant’s transitory work history, the employer satisfied the second prong of Kachinski by offering the claimant a job in Pittsburgh, the city where she worked at the time of her injury and immediately prior to the employer's offer. Moreno-Leonardo.
In this case, however, Employer has not established that Claimant had a transitory work history or a transient lifestyle. See Carrasquer v. Workmen's Compensation Appeal Board (Mader’s Carpet Cleaners of Pittsburgh, Inc.), 124 Pa.Commonwealth Ct. 385, 555 A.2d 1388 (1989). Instead, Employer offers a relocation policy, which provides as follows:
Relocation. You may be required to relocate to begin your new supervisor training program and again when you receive your first assignment after completing the NSTP [new supervisor training program]. Relocation is likely as you are promoted in the Roadway system.
(R.R. at 19a.) This policy applies to persons, like Claimant, in the new supervisor training program. The policy states that such a person can expect to relocate when beginning the program, when receiving the first assignment after completion of the program and when being promoted. Claimant may have agreed to a somewhat transient lifestyle, but only with respect to those situations described in the policy. Nothing in the record here indicates that the dispatcher job would have been the beginning of the program for Claimant, Claimant's first assignment after completion of the program or a promotion. Thus, Employer's offer of the dispatcher job did not trigger Employer's relocation policy.

. Indeed, Claimant testified as follows:
Q Was there anything with regard to your injury, any psychological factor in terms of flashbacks or anything that you had when you visited a dock?
A Yes, unfortunately, whenever I see a Roadway truck, I constantly have flashbacks of skidding the forklift truck off the dock and reviewing the whole scenario in my mind.
And it basically provides me with a very uptight feeling.
(R.R. at 87a.) Dr. Joyce testified as follows:
Q Doctor, would you agree with the statement that, "I feel that this patient has developed considerable psychological problems relative to his injuries”?
A Uh-huh. (Affirmative) I wrote that.
Q Doctor, isn’t ... the fact in this case ... that this patient does have a psychological overlay with regard to his injuries?
A Oh, I think so.
[[Image here]]
Q And based upon your examination of this patient you didn’t feel it was appropriate for him to return to that type of job based on his psychological condition; is that correct?
A That’s correct.
(R.R. at 174a-75a.)

. Employer argues that this case should be remanded to the referee for an additional finding pertaining to Claimant's physical ability to perform the dispatcher job. We disagree. A fair reading of the referee’s decision shows that the referee found that Claimant could not physically perform the dispatcher job due to the twelve-hour shifts and the need to work around the equipment, i.e., in order to take inventory. (Referee’s Finding of Fact, No. 8; R.R. at 84a-86a.)
Trudnak v. Workmen's Compensation Appeal Board (Lucky Strike Coal Corp.), 157 Pa.Commonwealth Ct. 212, 629 A.2d 254 (1993), cited by Employer, is not applicable here. In Trudnak, we were unable to review the referee’s decision because, unlike here, the referee never even summarized the testimony upon which the referee based the decision. Although some of the referee’s findings here are merely summations of testimony, we believe that meaningful review is possible.