Gary KARPULK, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (WORTH AND COMPANY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 2, 1998.

Decided March 5, 1998.

Reargument Denied May 4, 1998.

Frederick J. Fanelli, Pottsville, for petitioner.

No appearance entered for respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and JIULIANTE, Senior Judge.

FRIEDMAN, Judge.

Gary Karpulk (Claimant) appeals from an order of the Workers' Compensation Appeal Board (WCAB) affirming the decision of the workers' compensation judge (WCJ) to suspend Claimant's compensation benefits under The Pennsylvania Workers' Compensation Act (Act).[1] We reverse.

Claimant received disability benefits for a work-related back injury sustained on January 9, 1991 while he was employed with Worth and Company (Employer). On or about May 17, 1991, Employer filed a petition to terminate, suspend or modify compensation benefits payable to Claimant,[2] alleging that, as of May 13, 1991, Claimant had sufficiently recovered from his work-related injury to enable him to return to employment within his physical restrictions and that Claimant was offered, but refused, such employment. Claimant filed an answer denying the allegations of Employer's petition, and hearings were held before a WCJ.[3]

Based on evidence adduced at the hearings, the WCJ found that Claimant was advised by Employer of the availability of jobs as a flagperson and an office worker and that Claimant was capable of performing these jobs. The WCJ further found that Claimant failed in good faith to attempt to perform either of these positions, and, accordingly, suspended Claimant's compensation benefits as of July 17, 1991.[4] (WCJ's Findings of Fact, No. 12, 12/23/92; WCJ's Conclusions of Law, No. 6, 12/23/92.) Claimant appealed this decision to the WCAB contending that a finding of a lack of good faith, leading to the suspension of benefits, was not supported by

the evidence. Claimant maintained that, because both jobs required him to drive one-hundred and fifty miles round-trip to the job site,[5] he was justified in not applying for the jobs and, thus, did not exhibit bad faith in failing to follow through on these job possibilities. (O.R., Opinion of WCAB dated March 23, 1994.) The WCAB agreed that, although Claimant had medical clearance to perform the duties of the jobs, "the burden was not upon Claimant to prove that he could not physically drive the [150] miles required to get to [and from] the job site. The burden was upon [Employer] to prove that Claimant's medical condition would not prevent him from driving that distance." (O.R., Opinion of WCAB of March 23, 1994, Page 4.) Because Employer failed to meet this initial burden, the WCAB determined that the issue of Claimant's bad faith was irrelevant. The WCAB then remanded the case to the WCJ for a determination as to whether the commute to the jobs was "medically within Claimant's geographical reach[.]" (O.R., Opinion of WCAB dated March 23, 1994, Page 5.)

On remand, the WCJ made the following relevant findings of fact:

3. [T]he parties agreed that the Claimant was working at a construction site for the Employer at West Wyoming Borough, Pennsylvania, and the Claimant lives in Cass Township which is a distance of approximately 75 miles one way from his home to the job site. It was also agreed that the Claimant would commute from his home to the job site every day and that the driving time, one way, was a minimum of one hour to one and a half hours.

4. The Claimant is required to get out and walk around his car after driving ap-

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4.

2. On Employer's form petition, the boxes for termination, suspension or modification of benefits were all checked.

3. Under the 1993 amendments to the Act, effective August 31, 1993, referees are now called Workers' Compensation Judges.

4. The WCJ specifically found that Employer established that as of July 17, 1991, the date of the final examination of Claimant by Employer's

medical expert, Claimant was capable of performing the positions of flag person and office worker. (WCJ's Conclusions of Law, Nos. 5–6, 12/23/92.)

5. Although the WCJ, in his opinion of 12/23/92, found that it was a one-hundred mile round-trip commute, (WCJ's Findings of Fact, No. 3, 12/23/92), the parties subsequently stipulated, and the WCJ found, that the trip was in fact one-hundred and fifty miles round-trip. (WCJ's Findings of Fact, No. 3, 3/8/95.)

proximately 20 minutes to a half-hour and would take approximately one hour and a half to drive from his home to the job site. During that period of time, he estimates that he would have to get out of his vehicle and walk around approximately six times as a result of pain in his back. Since the job started at 7:30 a.m., he estimates that he would have to leave his home at approximately 5 o'clock a.m. in order to arrive at the job site on time. He also estimates whereas his job ends at approximately 5:30 p.m., it would take him two and a half hours to drive home and [he] would not return to his residence until approximately 8 o'clock p.m. After standing during the day as a flagman and driving the distance required to and from his home, he would not be able to perform his job if he had to stand 8 to 10 hours per day.

5. Testifying on behalf of the Employer was Dr. Michael H.O. Dawson, Board Certified in orthopedic surgery, who was recalled to testify regarding the issue of the Claimant's ability to perform lighter duty jobs as of July, 1991. Accepting the stipulation concerning the distance from the Claimant's home to the job site, it was his opinion that the travel requirement would not have an impact on his physical ability to perform the jobs.

6. While the Claimant would have to exit his automobile and "stretch", Dr. Dawson did not consider the trip to be so unreasonable based upon the Claimant's degenerative disc disease that he could not drive that distance and perform his job.

7. This Judge reaffirms his finding that Claimant was capable of performing the jobs as a flagperson and office worker as of July, 1991. This Judge further finds, accepting the opinion of Dr. Dawson as competent, credible and worthy of belief, that the Claimant's condition permitted him to drive a distance from his home to the place of employment and return, which was medically approved by Dr. Dawson.
8. This Judge finds that the Claimant did not, in good faith, attempt to perform either of those positions or attempt to drive the distance from his home to the job site in order to determine his capability of performing the driving necessary to reach the job site and perform the job.

(WCJ's Findings of Fact, Nos. 3–8, 3/8/95.) Based on these findings of fact, the WCJ determined that Employer "met its burden of proof to establish that Claimant's condition permitted him to drive from his home to the job site and return," (WCJ's Conclusions of Law, No. 1, 3/8/95); therefore, the WCJ concluded that the jobs were actually available to Claimant. The WCJ also determined that, because Claimant did not apply for these available jobs, he did not follow through on the job referrals in good faith. Accordingly, the WCJ granted Employer's petition to suspend Claimant's compensation benefits as of July 17, 1991. (WCJ's Findings of Fact, No. 8, 3/8/95.) Claimant again appealed the WCJ's decision to the WCAB, which affirmed, and Claimant appeals from the WCAB's order to this court. Because we do not believe that Employer met its burden of proving that the job was actually available to Claimant,[6] we now reverse.[7]

6. Claimant sets forth the following question for our review:
    WHETHER [CLAIMANT] ACTED IN BAD FAITH FOR NOT ACCEPTING A LIGHT DUTY POSITION WHICH INVOLVES A DAILY 5 HOUR COMMUTE REQUIRING NUMEROUS STOPS ALONG INTERSTATE 81?
(Claimant's brief at v.) Ordinarily, no point will be considered which is not set forth in the statement of questions involved. Pa. R.A.P. 2116(a). Here, Claimant challenges only the determination of bad faith and does not raise the issue of whether the jobs were actually available to him; nevertheless, because job availability is argued in Claimant's brief, providing Employer with ample notice of the full extent of Claimant's arguments, we will address this issue. *See Sun*

*Oil Co. v. Workmen's Compensation Appeal Bd. (Thompson)*, 158 Pa.Cmwlth. 434, 631 A.2d 1084 (993). Moreover, in this particular situation, where Claimant argues that his refusal to accept the position was not made in bad faith because the job involved a one-hundred and fifty mile round-trip commute, he is clearly challenging the actual availability of that job.

7. We initially note that our scope of review in workers' compensation decisions is limited to determining whether an error of law was committed, whether constitutional rights were violated or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Berks County Home v. Workmen's Com-*

In *Kachinski v. Workmen's Compensation Appeal Board (Vepco Constr. Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), our supreme court set forth the following four-pronged analysis to be used when evaluating petitions based on job availability and the return to work of injured employees:

1. The employer who seeks to modify a claimant's benefits on the basis that [the claimant] has recovered some or all of his ability must first produce medical evidence of a change in condition.[8]

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, e.g., light work, sedentary work, etc.

3. The claimant must then demonstrate that [the claimant] has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

*Id.* at 252, 532 A.2d at 380.

Under the second prong of the *Kachinski* analysis, it is well-settled that, in making a particular job referral, the employer has the burden of proving that the job is actually available to the claimant:

[A] position may be found to be actually available, or within the claimant's reach, only if it can be performed by the claimant, having regard to his physical restrictions and limitations, his age, his intellectual capacity, his education, his previous work experience, and other relevant considerations, such as his place of residence.

*Dilkus v. Workmen's Compensation Appeal Bd. (John F. Martin & Sons)*, 543 Pa. 392, 398, 671 A.2d 1135, 1138 (1996) (quoting *Kachinski*); *Westerwald Pottery Corp. v. Workmen's Compensation Appeal Bd. (Watters)*, 692 A.2d 1145 (Pa.Cmwlth.1997). The "other relevant considerations" have included various *non-medical factors* in determining whether a position is actually available to a claimant, such as, the claimant's place of residence, the distance and duration of the claimant's commute, and the length of the workday. *Dilkus; DME Co. v. Workmen's Compensation Appeal Bd. (Peters)*, 162 Pa. Cmwlth. 418, 639 A.2d 869 (1994); *Goodwill Indus. of Pittsburgh v. Workmen's Compensation Appeal Bd. (Friend)*, 158 Pa.Cmwlth. 292, 631 A.2d 794 (1993); *Titusville Hosp. v. Workmen's Compensation Appeal Board (Ward)*, 122 Pa.Cmwlth. 619, 552 A.2d 365 (1989).[9] Ultimately, a "totality of the circumstances" approach should be applied to individual fact patterns when determining what is actually available and if a particular job is appropriate for a reasonable person in the position of the claimant. *Goodwill Indus. of Pittsburgh*. Applying this "totality of the circumstances" approach, we conclude that, because of the unreasonable length and nature of Claimant's commute, the potential jobs were unavailable as a matter of law.[10]

---

*pensation Appeal Bd. (Schnable)*, 145 Pa.Cmwlth. 582, 604 A.2d 767 (1992).

**8.** Proof of a change in medical condition is not required where, as here, the employer bases its petition to modify benefits on the availability of alternative employment within the claimant's physical limitations. *Lukens, Inc. v. Workmen's Compensation Appeal Bd. (Williams)*, 130 Pa. Cmwlth. 479, 568 A.2d 981 (1989), *appeal denied*, 527 Pa. 656, 593 A.2d 426 (1990).

**9.** In *Dilkus*, our supreme court held that a one hour commute was not unreasonable for an eight hour workday; however, in *Goodwill Industries of Pittsburgh*, we found that a twenty-hour per week, light duty position requiring a three hour, thirty mile daily bus commute with four bus transfers, was unreasonable. In *DME Company*, we held that a twenty mile commute was unreasonable based on the claimant's physical condition and lack of transportation. Finally, in *Titus-*

*ville Hospital*, we held that a position thirty-miles from the claimant's home was not available work based on claimant's lack of transportation to the employment offered.

**10.** Here, Dr. Dawson, Employer's medical expert, credibly testified that Claimant was physically capable of driving the required distance to the offered employment and that, despite Claimant's need to get out of the car and stretch, this commute did not preclude Claimant from physically performing the duties of the potential jobs. (WCJ's Findings of Fact, Nos. 5–6, 3/8/95; R.R. at 119a.) Were Claimant challenging Dr. Dawson's testimony on the basis that it did not provide substantial evidence to support a finding that the potential jobs were within Claimant's *physical* capabilities, Dr. Dawson's testimony would be relevant. However, the only question here is whether the potential jobs were available to Claimant based on the reasonableness of the commute. With respect to this *non-medical* fac-

We recognize that, *in terms of distance,* the length of this commute is identical to that which Claimant had to complete prior to his work-related injury. However, pre-injury, Claimant completed the one-hundred and fifty mile daily round-trip commute in an hour to an hour and a half each way, per ten hour workday, five days a week, without having to get out of his car. (WCJ's Findings of Fact, No. 4, 3/8/95; R.R. at 101a–03a.) After the work-related injury, this same daily round-trip became a commute of five hours, requiring Claimant to stop and stretch for fifteen to twenty minutes after every twenty minutes to a half hour of travel. (R.R. at 81a.) Thus, if Claimant accepted the offered jobs, he would be forced to endure a daily round-trip commute of five hours, for the same ten hour workday, five days a week. We would consider such a lengthy and difficult commute unreasonable, as a matter of law, even if it were not occasioned by Claimant's work-related injury. Moreover, Claimant's commute here would be disproportionate to the duration of his workday. Therefore, we hold that, as a matter of law, the potential positions offered to Claimant were not actually available to him. *Dilkus; Goodwill Indus. of Pittsburgh; DME Co.; Titusville.*

For the foregoing reasons, we reverse[11] the WCAB's suspension of Claimant's benefits.

## ORDER

AND NOW, this 5th day of March, 1998, the order of the Workers' Compensation Appeal Board, at No. A95–1588, dated May 30, 1997, is hereby reversed.

---

tor, Dr. Dawson's testimony is both irrelevant and incompetent.

**11.** Employer was precluded from filing a brief in this matter by Orders of Court dated December 29, 1997 and February 26, 1998. However, this has not prevented the court from performing its independent and exhaustive review of the issue before us and the applicable law.