**BLAKESLEE ALUMINUM, INC., Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (KOTULA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 6, 1999.

Decided Nov. 18, 1999.

---

Christopher B. Slusser, Hazleton, for petitioner.

Brian C. Corcoran, Kingston, for respondent.

Before DOYLE, President Judge, and COLINS, J., McGINLEY, J., SMITH, J., KELLEY, J., FLAHERTY, J. and LEADBETTER, J.

McGINLEY, Judge.

Blakeslee Aluminum, Inc. (Employer) petitions for review of the order of the Workers' Compensation Appeal Board (Board) that reversed the decision of the Workers' Compensation Judge (WCJ) that granted Employer's petition to modify Frank Kotula's (Claimant) benefits.

Employer employed Claimant as a production supervisor for its home improvement business. In approximately June 1991, Claimant invested $20,000 with Employer and received forty shares of non-voting stock. On October 4, 1991, Claimant sustained a work-related neck injury in an automobile accident. Employer issued a notice of compensation payable and agreed to pay Claimant $436 per week based on an average weekly wage of $738.

On May 12, 1995, Employer petitioned to modify Claimant's benefits and alleged that Claimant failed to make a good faith effort to follow through on available work.

Rocco Testa (Testa), president of Employer, stated before the WCJ that Employer referred two jobs to Claimant: gutter helper[1] and assistant production supervisor (Job). Testa characterized the Job as primarily office work, although Claimant would be expected to help unload trucks making deliveries if he were capable. Notes of Testimony, August 29, 1995, at 12–14.

Employer presented the deposition testimony of Patrick J. Fricchione, M.D. (Dr. Fricchione), board-certified in emergency medicine. Dr. Fricchione examined Claimant on February 1, 1995. Dr. Fricchione diagnosed Claimant with chronic paracervical pain due to minor irritation or inflammation of the muscles and connective tissues surrounding the muscles along the side of the lower portion of the neck. Deposition of Patrick J. Fricchione, M.D., September 1, 1995, (Dr. Fricchione Deposition) at 20; Reproduced Record (R.R.) at 177a. Dr. Fricchione testified that Claimant was capable of performing a medium duty job with limitations on repetitive lifting at shoulder height, pushing and pulling. He approved Claimant for the Job. Dr. Fricchione Deposition at 23, 30; R.R. at 180a, 187a.

Employer also presented the deposition testimony of Karen Van Hoesen (Van Hoesen), vocational counselor for Keystone Rehabilitation. Van Hoesen stated that J. Teig Port, M.D. (Dr. Port), Claimant's physician, and Dr. Fricchione approved the

---

1. The WCJ found that Claimant was incapable of performing the gutter helper position, and Employer never challenged that finding. Accordingly, whether Claimant made a good faith effort to follow up on the gutter helper position is not before us.

Job. Counsel for each party stipulated that the Job was offered to Claimant, and that he did not apply for it. Deposition of Karen Van Hoesen, August 3, 1995, at 21; R.R., at 107a.

Claimant testified that he could not work for Employer because he lost his investment when Testa seized[2] Employer's assets.[3] Claimant also testified that he could not perform the Job because it would involve more lifting than described and was similar to his job prior to his accident which he intensely disliked. N.T. at 31; R.R. at 52a.

Claimant also presented the deposition testimony of Dr. Port, a board-certified orthopedic surgeon and his treating physician from 1994 to 1996. After Claimant underwent a functional capacity evaluation in February 1995, Dr. Port released Claimant to medium duty work. Deposition of J. Teig Port, M.D., May 13, 1996, (Dr. Port Deposition) at 16–17. Dr. Port approved the Job but stated he would not have if it involved significantly more lifting than described. Dr. Port Deposition at 23.

The WCJ found Claimant capable of performing the Job, granted the modification petition and reduced Claimant's benefits accordingly. The WCJ made the following relevant finding of fact:

> 18. The Claimant's reason for not attempting to perform the Assistant Production Supervisor position, that he was unable to work for Rocco Testa, who obtained control of the Defendant [Employer] after being a creditor, to the detriment of the Claimant's investment in the Defendant Corporation [Employer], does not preclude the Claimant's attempt to perform a job with the Defendant [Employer].

WCJ's Decision, October 22, 1996, Finding of Fact No. 18 at 9; R.R. at 19a.

Claimant appealed to the Board and alleged that the Job was not available to him under the standard set forth in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987) because it was not reasonable for him to return to work for Employer after losing his investment. The Board reversed. The Board determined that the WCJ erred by not applying a "totality of the circumstances" approach adopted by this Court in *Karpulk v. Workers' Compensation Appeal Board (Worth and Co.)*, 708 A.2d 513, 516 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 557 Pa. 633, 732 A.2d 617 (1998). In *Karpulk*, we stated, "Ultimately, a 'totality of the circumstances' approach should be applied to individual fact patterns when determining what is actually available and if a particular job is appropriate for a reasonable person in the position of the claimant." *Karpulk*, 708 A.2d at 516.

Employer contends that the Board committed an error of law when it determined that the Job was not available and that

---

2. Claimant presented the deposition testimony of George F. Shovlin (Shovlin), an attorney consulted by Claimant regarding the loss of his investment. Shovlin explained that Testa sold his interest in Employer to Vince Giardina and Manvel Page in November of 1990, and retained a security interest in the corporation. When Giardina and Page defaulted on their payments to Testa, Testa seized the assets of Employer. Deposition of George F. Shovlin, March 28, 1996, at 15.

3. Claimant's counsel, Brian C. Corcoran, questioned Claimant concerning his desire to work for Employer:

> Q: When you received the job offers from Blakeslee Aluminum, working with Mr. Testa in Blakeslee Aluminum, besides whether or not you could do the jobs, was there another reason why you just didn't apply; is that correct?
> A: Yes.
> Q: Tell the Judge why not.
> A: Mentally I am destroyed. I cannot be – I cannot trust the company, I've already been shafted of $20,000, my life's savings. It is now destroyed and I've got to go to work because, man, it was supposed to take care of us. I couldn't work for a person who was like that. It ruined my wife and I; our closeness really ended because of this. Notes of Testimony, January 16, 1996, (N.T.) at 21; R.R. at 42a.

Claimant did not have to make a good faith attempt to obtain it.[4]

■ The employer bears the burden of proof to modify a claimant's benefits based on a claimant's alleged ability to return to work. In *Kachinski*, our Pennsylvania Supreme Court adopted the following requirements which an employer must meet to satisfy its burden to modify compensation payments:

1. The employer must produce medical evidence of a change in the employee's condition.

2. The employer must produce evidence of a referral to a then open job (or jobs), which fits the occupational category which the claimant has been given medical clearance e.g., light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

*Kachinski*, 516 Pa. at 252, 532 A.2d at 380.

Our Pennsylvania Supreme Court has provided the following guidance in determining whether a job is "available" to a claimant:

[A] position may be found to be actually available, or within the claimant's reach, only if it can be performed by the claimant, having regard to his physical restrictions and limitations, his age, his intellectual capacity, his education, his previous work experience, and other relevant considerations, such as his place of residence.

*Dilkus v. Workmen's Compensation Appeal Board (John F. Martin & Sons)*, 543 Pa. 392, 398, 671 A.2d 1135, 1138 (1996) (quoting *Kachinski*).

■ Other relevant considerations have included non-medical factors such as the claimant's place of residence, the distance and duration of the claimant's commute, and the length of the workday. The totality of the circumstances approach should be used to determine whether a job is available and appropriate for a reasonable person in Claimant's position. *Karpulk*. In *Karpulk*, Worth and Company (Worth) petitioned to terminate, suspend or modify Gary Karpulk's (Karpulk) on the basis that Karpulk had sufficiently recovered from his work-related injury to return to work within his physical restrictions but had refused Worth's offer of such employment. The WCJ found that the jobs offered by Worth were seventy-five miles from Karpulk's home, approximately the same distance Karpulk drove one way to a construction site for Worth prior to his injury. *Karpulk*, 708 A.2d at 514. The WCJ also determined that because Karpulk's work-related back condition required him to stop every twenty minutes, get out of the car and walk around, the one hundred fifty mile roundtrip commute would take Karpulk approximately five hours. The WCJ granted Worth's petition, and the Board affirmed. *Karpulk*, 708 A.2d at 515. We reversed and determined, "Applying this 'totality of circumstances' approach, we conclude that, because of the unreasonable length and nature of Claimant's [Karpulk] commute, the potential jobs were unavailable as a matter of law." (Footnote omitted). *Karpulk*, 708 A.2d at 516.

■ We agree with the Board that the totality of circumstances approach applies. However, we find the Board improperly extended the circumstances to include Claimant's subjective distrust of Employer rather than objective circumstances which a reasonable person in Claimant's position would face such as distance, transportation, and loss of economic benefits. There is nothing in the record to indicate any fraud or malice on the part of

---

4. Our review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa.Cmwlth. 15, 589 A.2d 291 (1991).

Testa or any objective basis for Claimant's beliefs. Testa did not induce Claimant to invest. Indeed, he no longer was an owner of Employer at the time the offer was made. In contrast to *Karpulk,* here there is no medical or physical reason why the Job was not available for Claimant, only a subjective, emotional reason was asserted. We agree with the WCJ's finding that the Job was available.

Accordingly, we reverse and reinstate the decision of the WCJ.

## ORDER

AND NOW, this 18th day of November, 1999, the order of the Workers' Compensation Appeal Board in the above-captioned matter is reversed and the decision of the Workers' Compensation Judge is reinstated.

Judge COLINS and Judge SMITH dissent.