**PRESBY HOMES AND SERVICES,**
Petitioner

v.

**WORKERS' COMPENSATION
APPEAL BOARD (QUIAH),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 28, 2009.

Decided Nov. 5, 2009.

Joel I. Herzfeld, Philadelphia, for petitioner.

Larry Pitt, Philadelphia, for respondent.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

Presby Homes and Services (Employer) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) granting a claim petition filed by its employee, Rachel Quiah (Claimant). In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ), who held that Claimant was entitled to full disability benefits because the modified-duty position Employer offered to Claimant was not actually available. In this case, we consider whether an employer's job offer is a bona fide offer where the employer reserves the right to revise the duties of a job and offers the job on an "at will" basis, as opposed to a contract basis.

Claimant worked for Employer as a certified nursing assistant. On June 4, 2007, Claimant was bathing a non-ambulatory resident, who resisted being positioned on her side and fell backward onto Claimant's left arm. Employer issued a notice of temporary compensation payable on June 13, 2007, describing Claimant's injury as a lumbar sprain/strain. Thereafter, Claimant filed a claim petition on June 28, 2007, alleging that she suffered a lower back injury and a left wrist injury and was disabled from returning to work. On August 30, 2007, Employer issued a notice stopping temporary compensation and a

medical-only notice of compensation payable (NCP). The NCP noted that Claimant's disability benefits were suspended because she failed to return to the modified-duty position Employer had offered to her to begin on August 29, 2007. Reproduced Record at 69a (R.R. ——). The claim petition was assigned to a WCJ.

Claimant testified on her own behalf, both by deposition and before the WCJ. Claimant acknowledged that Employer offered her a modified-duty position but stated that she did not accept it because of ongoing pain in her back and right leg.

Claimant presented the deposition testimony of her medical expert, Dr. Stephen F. Ficchi. Dr. Ficchi testified that Claimant was first seen in his office on July 2, 2007. He did not personally examine Claimant. Based upon his review of his colleagues' records, Dr. Ficchi diagnosed Claimant with a herniated lumbar disc; a right L5 radiculopathy; a left wrist sprain/strain and a left thumb sprain/strain. He opined that those conditions were directly related to the work incident on June 4, 2007. Dr. Ficchi further opined that Claimant was not physically capable of returning to her former position or to the modified-duty position.

Employer presented the deposition testimony of its independent medical examiner, Dr. Scott A. Rushton, a board-certified orthopedic surgeon who evaluated Claimant on August 6, 2007. Dr. Rushton diagnosed Claimant with a symptomatic L4–L5 herniated disc and resultant L5 radiculopathy on the right side. Dr. Rushton's report restricted Claimant to lifting no more than 10 pounds and to only "occasional" bending, squatting, climbing, reaching above her shoulder, kneeling, crawling and using foot controls. R.R. 166a. Dr. Rushton concluded that Claimant was capable of returning to sedentary work on a full-time basis and that the modified-duty position offered by Employer fit within his restrictions.

Employer also offered the deposition testimony of its Staff Development Coordinator, Susan Harmon. Harmon testified that when she received Dr. Rushton's report on Claimant's physical capabilities, she prepared a modified-duty job description for Claimant's position to accommodate her restrictions. As a "Temporary Modified Duty Certified Nursing Assistant," Claimant would have been responsible for, *inter alia*, sitting in the dining room with residents; attending to residents' needs with respect to feeding, grooming and communicating; protecting the personal belongings of the residents; assisting with the orientation of new residents and their families; and assisting her supervisor with administrative tasks and special projects within her physical limitations. R.R. 168a–169a.

The four-page job description ended with a "Receipt and Acknowledgment" section that contained the following relevant provisions:

> I acknowledge and understand that . . . receipt of the job description does not imply nor create a promise of employment, nor an employment contract of any kind, and that my employment is at-will.

> \* \* \*

> [J]ob duties, tasks, work hours and work requirements may be changed at any time.

R.R. 170a. Harmon sent a copy of the job description to Claimant on August 22, 2007, along with a notice of availability to return to work and a letter confirming that Claimant was expected to return to full-time work on August 29, 2007, at her pre-injury salary. Claimant did not respond to the job offer or report back to work.

The WCJ credited the testimony of Dr. Rushton in its entirety, including his clinical findings, his opinions regarding Claimant's work restrictions and his opinion that Claimant could perform the duties of the modified-duty certified nursing assistant position. The WCJ rejected as not credible Claimant's testimony that the physical restrictions resulting from her work injury exceeded those placed upon her by Dr. Rushton. Finally, the WCJ rejected Harmon's testimony that a modified-duty position had been made available, reasoning, *sua sponte*, that because the modified-duty position was "at-will" and the duties could be revised by Employer, there had been no valid job offer.

Based on the foregoing findings, the WCJ held that Employer "failed to show that the alleged offered modified job actually existed . . . and further failed to show that such was a bona fide job offer." WCJ Opinion at 9. The WCJ also found that Claimant met her burden of proving that she sustained a disabling work-related injury on June 4, 2007. Accordingly, the WCJ granted Claimant's claim petition for benefits effective June 5, 2007. Employer appealed to the Board, and the Board affirmed. Employer now petitions for this Court's review.[1]

■ Employer argues that the WCJ erred in finding that the modified-duty job it offered to Claimant was not available due to the qualifying language in the Receipt and Acknowledgment section of the job description. Employer contends that these insignificant and boilerplate provisions merely memorialized the at-will nature of every employment relationship and in no way limited the availability of the position. Employer maintains that it satisfied the well-settled standards for demonstrating that a modified-duty position was actually available to its partially disabled employee. We agree.

■ In a proceeding on a claim petition, the claimant bears the burden of establishing a work-related injury rendering the claimant incapable of performing the time-of-injury job. *Vista International Hotel v. Workmen's Compensation Appeal Board (Daniels)*, 560 Pa. 12, 22, 742 A.2d 649, 654 (1999). If the employer asserts that the claimant can perform some work within her medical restrictions, the employer bears the burden of proving that suitable employment is available. *Id.* (citing *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 244–45, 532 A.2d 374, 376 (1987)).[2]

> [A] position may be found to be actually available, or within the claimant's reach, only if it can be performed by the claimant, having regard to his physical restrictions and limitations, his age, his

---

1. Our scope of review in workers' compensation decisions is limited to determining whether an error of law was committed, whether constitutional rights were violated or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Karpulk v. Workers' Compensation Appeal Board (Worth and Company)*, 708 A.2d 513, 515 n. 7 (Pa.Cmwlth.1998).

2. Generally, issues concerning the availability of modified-duty work arise in the context of an employer's petition to suspend, terminate or modify benefits. The instant matter arose from a proceeding on a claim petition; however, the initial burden of proof associated with job availability was still allocated to Employer once Claimant demonstrated a loss of earning capacity attributable to a work-related injury. *Vista International Hotel*, 560 Pa. at 28 n. 11, 742 A.2d at 658 n. 11 (1999). Moreover, "[w]orkers' compensation judges are vested with the authority to render adjudications on claim petitions which incorporate aspects of modification, suspension or termination where the evidence so indicates, without the necessity of formal petitions by the employer." *Id.*

intellectual capacity, his education, his previous work experience, and other relevant considerations, such as his place of residence. *Roth v. Workers' Compensation Appeal Board (Amore Management Co.),* 727 A.2d 1185, 1187 (Pa.Cmwlth.1999) (quoting *Kachinski,* 516 Pa. at 251, 532 A.2d at 379). The "other relevant considerations" have included various non-medical factors in determining whether a position is actually available to a claimant, such as the claimant's place of residence, the distance and duration of the claimant's commute, and the length of the workday. *Karpulk v. Workers' Compensation Appeal Board (Worth and Company),* 708 A.2d 513, 516 (Pa.Cmwlth.1998). Ultimately, a "totality of the circumstances" approach should be applied to individual fact patterns when determining what is actually available and if a particular job is appropriate for a reasonable person in the position of the claimant. *Id.*

In this case, the challenged language in the job description did two things: it (1) confirmed the at-will nature of Claimant's employment, and (2) advised Claimant that her "job duties, tasks, work hours and work requirements may be changed at any time." R.R. 170a. There was no testimony from Claimant, or any witness, about the effect of these provisos in the Acknowledgment. *Sua sponte,* the WCJ decided that these provisos contradicted Harmon's testimony that Employer had made a modified-duty position available to Claimant. Accordingly, the WCJ did not credit Harmon. There are several problems with the WCJ's reasoning.

First, the effect of these provisos has nothing to do with Harmon's credibility. Their effect on the validity of Employer's job offer is a pure question of law. The WCJ's authority over credibility determinations did not permit him to rewrite the legal definition of "available" in this context. Second, the job offer was written, and Harmon's testimony was not necessary to establish the fact or terms of Employer's modified duty job offer. Finally, the WCJ's reasoning is unfounded, as a matter of law. The Acknowledgement provisos did not render Employer's job offer either illusory or invalid.

The "at-will" proviso was of no moment to the question of whether Employer made a modified-duty job available to Claimant. Pennsylvania is an at-will employment state, meaning that, absent a statutory or contractual provision to the contrary, either party may terminate an employment relationship for any or no reason. *Weaver v. Harpster,* —— Pa. ——, ——, 975 A.2d 555, 562 (2009) (citing *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974)). Employer could terminate Claimant's modified-duty position for any number of reasons that have nothing to do with her workers' compensation claim, such as downsizing or her own misconduct. No job, including Claimant's modified-duty job, or her pre-injury job, is guaranteed for life. Employer did not act in bad faith by including language to that effect in the job description.

Similarly, Employer did not negate the availability of the modified-duty position by reserving the right to change Claimant's job duties, tasks and work requirements. Employer went to the trouble of creating a modified-duty position for Claimant that satisfied the physical restrictions imposed by its own independent medical examiner, whose testimony was credited in its entirety by the WCJ. It is implicit that any subsequent modifications to the essential duties of the position must also fit within Claimant's restrictions. If, in the future, Employer imposes duties on Claimant that exceed her limitations, she is not without recourse; Claimant can file a petition to reinstate total disability bene-

fits. That hypothetical situation is similar to those cases where a claimant returns to work under a suspension, with restrictions, and subsequently experiences a loss of earning power because she is laid off. *See, e.g., Crowell v. Workmen's Compensation Appeal Board (Johnson Dairy Farm)*, 665 A.2d 30 (Pa.Cmwlth.1995). Claimant would also be entitled to a presumption that her disability, *i.e.,* loss of earning power, is causally related to the continuing work injury. *Id.* at 32. Claimant would only have to demonstrate that the reason for the suspension of benefits (availability of work within her restrictions) no longer exists. *Id.*

Although not directly on point, *General Electric Co. v. Workers' Compensation Appeal Board (Myers)*, 578 Pa. 94, 849 A.2d 1166 (2004) (opinion announcing judgment of Court), is instructive. In that case, the employer sought to modify the claimant's benefits after he refused a light-duty position with a telecommunications company that fit his medical restrictions. Testimony revealed that the position was fully subsidized by employer's insurance carrier, but only for a period of 90 days or less. Although the "new" employer typically continued to employ these subsidized employees, there was no guarantee of employment and the job duties, hours and wages were subject to change.

The WCJ concluded that the offered job was "similar to the [e]mployer having a short-term light-duty program." *Id.* at 102, 849 A.2d at 1170. The WCJ granted the modification of claimant's benefits from total to partial, but only for a period of 90 days to reflect that the light-duty job was only temporarily available. The Supreme Court affirmed, rejecting employer's argument that the position was a continuous light-duty position which claimant, like any other employee-at-will, was guaranteed would continue so long as he performed as expected. There was more than sufficient evidence for the WCJ to find that claimant's light-duty job would have either ended or significantly changed at the end of the subsidy period.

■■■ In reaching its conclusion, the Court reiterated that *Kachinski* and its progeny require the employer to act in good faith. When an employer refers a claimant to an available job within the claimant's medical restrictions,

> the referral must "be tailored to the claimant's abilities . . . and be made in a good faith attempt to return the injured employee to productive employment, rather than a mere attempt to avoid paying compensation." . . . We directed that to meet this burden, an employer needs to "produce medical evidence describing the claimant's capabilities, and vocational evidence classifying the job, e.g., whether it is light work, sedentary work, etc., along with a basic description of the job in question." . . . It is then up to a workers' compensation judge to determine whether the claimant can actually perform the job in question.

*General Electric Co.,* 578 Pa. at 104, 849 A.2d at 1171–1172 (quoting *Kachinski,* 516 Pa. at 251, 252, 532 A.2d at 379, 380). Accordingly, the Supreme Court held that when an employer refers a claimant to a job that will become unavailable at a set date in the future, the claimant's benefits should only be modified for the period of time the job is available. *Id.* at 106, 849 A.2d at 1173.

Here, Employer created a modified-duty job tailored to Claimant's adjudicated physical restrictions, and the WCJ rejected Claimant's testimony that the job exceeded her limitations. This finding alone demonstrates that Employer made a good faith attempt to return Claimant to productive employment. The WCJ presumed that Employer acted in bad faith because the boilerplate language in the job description somehow made the position ephemer-

al. This presumption was not supported by any evidence. It was not correct as a matter of law because in Pennsylvania the employment relationship is "at-will." *General Electric* teaches that a modified-duty job should be deemed "temporary" only when it will become unavailable on a date certain. Moreover, the claimant is still expected to accept this temporary position. The job offered by Employer was not temporary. Even if it were, however, Claimant was required to accept it under *General Electric.*

 For all of the foregoing reasons, we affirm, with a modification, the order of the Board affirming the WCJ's adjudication.[3] The WCJ's award of disability benefits is limited to the closed period from June 5, 2007, through August 28, 2007. Claimant's benefits are suspended effective August 29, 2007, by reason of her failure to report for modified-duty work, which we hold was actually available to her on that date.

## ORDER

AND NOW, this 5th day of November, 2009, the order of the Workers' Compensation Appeal Board dated April 15, 2009, in the above-captioned matter is hereby AFFIRMED with the following modification: the Workers' Compensation Judge's award of disability benefits is limited to the closed period from June 5, 2007, through August 28, 2007. Claimant's benefits are suspended effective August 29, 2007.

---

3. Once an employer proves that it offered the claimant an available job, the burden shifts to the claimant to prove that she followed through on the job referral in good faith. *General Electric Co.,* 578 Pa. at 104, 849 A.2d at 1172. It is not necessary, however, to remand the present matter for further findings on whether Claimant acted in good faith. A claimant who chooses not to follow through on a job referral based upon the advice of her physician does so at her own peril, because the WCJ may choose to believe the employer's medical expert instead of the claimant's. *Cashmark v. Workmen's Compensation Appeal Board (Great A & P Tea Company),* 135 Pa. Cmwlth.464, 580 A.2d 1189 (1990). Such was the case here. Claimant refused to report for modified-duty based primarily on the advice of her doctor. The WCJ chose to credit the opinion of Employer's expert, Dr. Rushton, that Claimant could perform the modified-duty position.